UNITED STATES of America, Appellee,

v.

**Zein Hassan ISA, Appellant.**

No. 90-2137.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1990.

Decided Jan. 10, 1991.

Daniel Reardon, Jr., Clayton, Mo., for appellant.

Terry Adelman, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and HARRIS,* District Judge.

JOHN R. GIBSON, Circuit Judge.

This is an appeal from an order of the district court[1] holding that electronic surveillance which recorded the commission of a murder was lawfully authorized and conducted under the Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1801–1811 (1988), and denying a motion to suppress the evidence obtained through that surveillance. Appellant contends that the district

* The HONORABLE OREN HARRIS, Senior United States District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

1. The Honorable John F. Nangle, Senior United States District Judge for the Eastern District of Missouri.

court erred by refusing to suppress tapes obtained from the electronic surveillance of his residence because (1) the surveillance lacked probable cause, and (2) the government conducted the surveillance unlawfully. He also argues that the district court's *ex parte, in camera* review of the application for surveillance order, the surveillance order itself, and other materials relating to the surveillance violated his sixth amendment right to confrontation. We affirm the judgment of the district court.

The State of Missouri has charged Zein Hassan Isa and his wife, Maria Matias Isa, with first-degree murder of their sixteen-year-old daughter at their residence in St. Louis, Missouri. The State of Missouri intends to introduce at trial recordings of the actual murder and telephone conversations before and after the murder. The State of Missouri obtained the recordings from the Federal Bureau of Investigation, which had been conducting electronic surveillance of Zein Hassan Isa at his residence.

The FBI obtained a court order authorizing electronic surveillance of Isa pursuant to the Foreign Intelligence Surveillance Act. 50 U.S.C. §§ 1801–1811. To obtain such an order, a federal officer, after receiving the Attorney General's approval, must submit an application to one of seven district judges, appointed by the Chief Justice to serve on the Foreign Intelligence Surveillance Court. 50 U.S.C. §§ 1803(a), 1804(a). The application must contain, *inter alia,* the identity of the target, a statement of reasons to believe that the target of the surveillance is a "foreign power or an agent of a foreign power," specified information on the implementation of the surveillance, and a "certification" from a high ranking executive branch official stating that the official "deems the information sought to be foreign intelligence information" and that the "information cannot reasonably be obtained by normal investigative techniques."[2] 50 U.S.C. § 1804(a)(1)–(11).

Before issuing an order authorizing electronic surveillance, the judge must make specific findings, including that "there is probable cause to believe that the target of

2. 50 U.S.C. § 1804(a) sets forth the following specific requirements of the application:

Each application for an order approving electronic surveillance ... shall include:

(1) the identity of the Federal officer making the application;

(2) the authority conferred on the Attorney General by the President of the United States and the approval of the Attorney General to make the application;

(3) the identity, if known, or a description of the target of the electronic surveillance;

(4) a statement of the facts and circumstances relied upon by the applicant to justify his belief that—

(A) the target of the electronic surveillance is a foreign power or an agent of a foreign power; and

(B) each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power;

(5) a statement of the proposed minimization procedures;

(6) a detailed description of the nature of the information sought and the type of communications or activities to be subjected to the surveillance;

(7) a certification or certifications by the Assistant to the President for National Security Affairs or an executive branch official or officials designated by the President from among those executive officers employed in the area of national security or defense and appointed by the President with the advice and consent of the Senate—

(A) that the certifying official deems the information sought to be foreign intelligence information;

(B) that the purpose of the surveillance is to obtain foreign intelligence information;

(C) that such information cannot reasonably be obtained by normal investigative techniques;

(D) that designates the type of foreign intelligence information being sought according to the categories described in section 1801(e) of this title; and

(E) including a statement of the basis for the certification that—

(i) the information sought is the type of foreign intelligence information designated; and

(ii) such information cannot reasonably be obtained by normal investigative techniques;

(8) a statement of the means by which the surveillance will be effected and a statement whether physical entry is required to effect the surveillance;

(9) a statement of the facts concerning all previous applications ...;

(10) a statement of the period of time for which the electronic surveillance is required to be maintained

....

the surveillance is a foreign power or an agent of a foreign power," that the place "at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power," that the application properly proposes to minimize the intrusion upon the target's privacy, and that the application contains the necessary statements and certifications. 50 U.S.C. § 1805(a). If the target is a "United States person," [3] the judge must also find that all statements and certifications required by § 1804(a)(7)(E) are not clearly erroneous. 50 U.S.C. § 1805(a)(5). The judge considering the application may enter an *ex parte* order approving electronic surveillance. 50 U.S.C. § 1805(a). The order must contain specific information and required directions governing the surveillance. 50 U.S.C. § 1805(b).

Evidence obtained from a surveillance may be used in a criminal proceeding only in accordance with procedures outlined in 50 U.S.C. § 1806. First, the Attorney General must authorize use of the information in a criminal proceeding. 50 U.S.C. § 1806(b). Notification must then be provided to the court where the criminal proceeding is pending and to the "aggrieved person" [4] against whom the information will be offered. 50 U.S.C. § 1806(c), (d). The aggrieved person may file a motion to suppress on the ground that the surveillance was illegal. 50 U.S.C. § 1806(e). The government may seek its own determination of the legality of the surveillance by filing a petition in the United States District Court where the criminal trial is pending. 50 U.S.C. § 1806(f). If the Attorney General files an affidavit stating that disclosure or an adversary hearing would harm the national security of the United States, then the district court makes this determination *ex parte* based on an *in camera* examination of the relevant documents. *Id.* The court may disclose those materials to the aggrieved person "only where such disclosure is necessary to make an accurate determination of the legality of the surveillance." *Id.* The district court's order regarding the legality of the surveillance is final and "binding upon all courts of the United States and the several states except a United States court of appeals and the Supreme Court." 50 U.S.C. § 1806(h).

After the Attorney General authorized the Circuit Attorney for the City of St. Louis to use information obtained in the surveillance of Isa in criminal proceedings against the Isas, the government brought this action in district court seeking a judicial determination of the legality of the surveillance. The Attorney General of the United States attached an Affidavit and Claim of Privilege to the government's petition stating that "it would harm the national security of the United States to disclose or have an adversary hearing with respect to the documents of the United States Foreign Intelligence Surveillance Court."

The district court conducted an *in camera, ex parte* review of the application for the surveillance order, the surveillance order itself, and related documents. *United States v. Isa,* No. 90-73CR (1) slip op. (E.D.Mo. June 18, 1990) (under seal). The court examined the application submitted to the Intelligence Surveillance Court and concluded that probable cause existed (1) to believe that Isa was an "agent of a foreign power" and (2) that "each of the places at which the surveillance was to be directed was being used or was about to be used by [him]." *Id.* at 6. The court also found that the minimization procedures proposed in the application met the requirements of 50 U.S.C. § 1801(h), that the required statements and certifications accompanied the application, and that the statements and certifications were not clearly erroneous. *Id.* The court denied Isa's motion to suppress, ruling that the application and surveillance order conformed with the require-

3. A "United States person" includes a "citizen of the United States," and "an alien lawfully admitted for permanent residence." 50 U.S.C. § 1801(i). Isa was born in Palestine and became a naturalized United States citizen in 1980. There is no dispute that he qualifies as a "United States person."

4. "Aggrieved person" is defined as "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance." 50 U.S.C. § 1801(k).

ments of the Act and that the surveillance was lawfully conducted. *Id.* at 9. This appeal followed.[5]

I.

█ Appellant first argues that his fourth amendment rights were violated because the application for the order authorizing the continuous electronic surveillance of his residence did not contain sufficient information to establish probable cause. He argues that the highly intrusive nature of the surveillance required a high threshold of probable cause. He claims that probable cause could not be established here, and that the government's only possible motive for the surveillance must have been that he is a native-born Palestinian with family ties and social contacts in Palestine and continuing communication with people on the West Bank.[6]

The materials submitted to the Foreign Intelligence Surveillance Court and the district court have also been submitted to the judges of this panel. It is our unanimous conclusion that the district court did not err in concluding that probable cause existed to believe that appellant was an agent of a foreign power and that each of the places where the electronic surveillance was conducted was being used or was about to be used by him. Indeed, after reviewing these materials, we are convinced that overwhelming support existed for issuing a surveillance order. Accordingly, we are satisfied that appellant's fourth amendment rights were not violated. *See United States v. Cavanagh,* 807 F.2d 787, 789 (9th Cir.1987). Because of the Affidavit and Claim of Privilege filed by the Attorney General of the United States, we make no further public statement.

█ Next, appellant argues that his fourth amendment rights were violated because the government failed to comply with the minimization procedures defined in 50 U.S.C. § 1801(h). Specifically, he contends that the tapes turned over to the State of Missouri record a "private domestic matter," which is not relevant material under the Foreign Intelligence Surveillance Act and must therefore be destroyed. In support of this argument, he cites isolated sentences regarding required minimization procedures from the legislative history of the Foreign Intelligence Surveillance Act:

> Minimization procedures might also include restrictions on the use of surveillance to times when foreign intelligence information is likely to be obtained,....
>
> ....
>
> [Furthermore, a target's] communications which are clearly not relevant to his clandestine intelligence activities should be destroyed.

S.Rep. No. 95–701, 95th Cong., 2d Sess. 4, *reprinted in* 1978 U.S.Code Cong. and Admin. News 3904, 3973, 4009.

Notwithstanding the minimization procedures required by 50 U.S.C. §§ 1804(a)(5), 1805(b)(2)(A) and defined in 50 U.S.C. § 1801(h), the Act specifically authorizes the retention of information that is "evidence of a crime", 50 U.S.C. § 1801(h)(3), and provides procedures for the retention and dissemination of such information. 50 U.S.C. § 1806(b)–(f). There is no requirement that the "crime" be related to foreign intelligence. Indeed, the legislative history of section 1801(h)(3) suggests the contrary:

> [T]he committee believes that dissemination should be permitted to State and local law enforcement officials. If Federal agents monitoring a foreign intelligence surveillance authorized under this chapter were to overhear information relating to a violation of State criminal law, such as homicide, the agents could hardly be expected to conceal such information from the appropriate local officials.

5. Maria Matias Isa did not appeal the district court's order.

6. Appellant filed an affidavit with the district court stating that he was born in Palestine (Jordan), and that he had gone back to Palestine three times in the last five years. He denied that he belonged to or sympathized with the Palestinian Liberation Organization. He argues that his infrequent telephone calls to and from Palestine were personal matters, with no connection to the Palestinian Liberation Organization or any terrorist groups.

S.Rep. No. 95–701, 95th Cong., 2d Sess. 4, *reprinted in* 1978 Code Cong. and Admin. News 3973, 4029.

In *United States v. Hawamda,* No. 89–56–A, 1989 WL 235836 (E.D.Va., April 17, 1989), the district court rejected an argument identical to the one put forth by appellant. In that case, defendants were indicted on wire fraud, credit card fraud, and conspiracies to commit those offenses. Defendants filed a motion to suppress evidence obtained from electronic surveillance authorized under the Federal Intelligence Surveillance Act on the ground that the evidence gathered had nothing to do with foreign intelligence. The court denied the motion, stating that "when a monitoring agent overhears evidence of domestic criminal activity, it would be a subversion of his oath of office if he did not forward that information to the proper prosecuting authorities." *Id.* at 4–5. Although we generally do not cite unpublished opinions, this language is particularly persuasive, and we believe it appropriate to cite here. *See also In re Kevork,* 788 F.2d 566, 570 (9th Cir. 1986) (authorizing use of surveillance information in foreign criminal prosecution for conspiracy to commit murder and murder).

Moreover, other courts of appeals have approved dissemination of evidence of criminal activity resulting from foreign intelligence surveillance intercepts. *See, e.g., United States v. Pelton,* 835 F.2d 1067, 1075–76 (4th Cir.1987), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988); *Cavanagh,* 807 F.2d at 790–91; *United States v. Badia,* 827 F.2d 1458, 1464 (11th Cir.1987), *cert. denied,* 485 U.S. 937, 108 S.Ct. 1115, 99 L.Ed.2d 275 (1988); *United States v. Duggan,* 743 F.2d 59, 78 (2d Cir.1984); *United States v. Belfield,* 692 F.2d 141, 147–49 (D.C.Cir.1982). Thus, we conclude that the tapes are "evidence of crime" and that the district court correctly denied appellant's motion to suppress. 50 U.S.C. § 1801(h)(3).

██ Along similar lines, appellant also argues that the district court erred in failing to suppress the tapes because he did not consent to their dissemination, and that his consent is required because the tapes involve a private domestic dispute, not a matter of foreign intelligence. He claims that the Senate Report shows that information can be disseminated without the target's consent only when the information is necessary to protect against "grave hostile acts of a foreign power," "sabotage or terrorism" or "clandestine intelligence activities." S.Rep. No. 95–701, 95th Cong., 2d Sess. 4, *reprinted in,* 1978 U.S.Code Cong. & Admin.News 3985, 4014. Appellant suggests that because evidence of other criminal activities is not a circumstance included in this list, such information cannot be disseminated absent his consent. The Senate Report, however, also provides:

> A Judiciary Committee amendment to the minimization definition makes explicit the intent that information not related to an approved purpose not be disseminated. The only exceptions to this prohibition recognized by the bill are for one of the [authorized purposes] or for the *enforcement of the criminal law under the provisions of [section 1806].* (emphasis added).

*Id.* at 4010.

The express language of the statute provides that information acquired from electronic surveillance conducted under the Foreign Intelligence Surveillance Act may be turned over to law enforcement officials with the consent of the Attorney General and may be disclosed "without the consent of the United States person only in accordance with the minimization procedures required by this chapter." 50 U.S.C. § 1806(a). The minimization procedures defined in 50 U.S.C. § 1801(h) expressly state that the government is not required to minimize information that is "evidence of a crime." 50 U.S.C. § 1801(h)(3). Thus, the tapes may be disseminated without appellant's consent and the district court correctly denied appellant's motion to suppress.

██ Finally, appellant argues that the tapes should be suppressed because the government violated his fourth amendment rights by failing to provide him the minimization logs of the entire surveillance. He contends that the Attorney General can-

not selectively disseminate portions of the materials collected against him. The Foreign Intelligence Surveillance Act, however, does not require that a target be provided the minimization logs of the entire surveillance. Indeed, specific provisions of the Act suggest the contrary. For example, 50 U.S.C. § 1806(b) allows Federal officers and employees to disclose "evidence of crimes" to law enforcement officials. This necessarily involves a selective process. Thus, we are satisfied that the district court did not violate appellant's fourth amendment rights by refusing to provide Isa with minimization logs of the entire surveillance.

II.

Appellant next argues that the district court improperly conducted an *ex parte, in camera* review of the application for electronic surveillance, the order authorizing electronic surveillance, and materials relating to the surveillance. Appellant contends that such a review was not warranted by the Act and violated his sixth amendment right to confrontation.

The Foreign Intelligence Surveillance Act authorizes a district court to conduct an *in camera* and *ex parte* review of the application for surveillance, the surveillance order, and other materials relating to the surveillance when the "Attorney General files an affidavit ... that disclosure or an adversary hearing would harm the national security of the United States." 50 U.S.C. § 1806(f). "Disclosure and an adversary hearing are the exception occurring *only* when necessary." *Belfield,* 692 F.2d at 147 (emphasis in original); *see* 50 U.S.C. § 1806(f).

Appellant urges that an *ex parte, in camera* review was not warranted here because the information involved a "purely domestic dispute," not a matter of foreign intelligence or national security. We are not persuaded that appellant was entitled to disclosure and a hearing because the tapes turned over for his criminal prosecution did not involve matters of foreign intelligence or national security. In determining whether the surveillance was lawful, the district court considered materials implicating national security interests. Our study of the materials leaves no doubt that substantial national security interests required the *in camera, ex parte* review, and that the district court properly conducted such a review. 50 U.S.C. § 1806(f); *see United States v. Sarkissian,* 841 F.2d 959, 964 (9th Cir.1988); *Badia,* 827 F.2d at 1463–64; *Belfield,* 692 F.2d at 146–147.

Appellant's final challenge is that the district court's *ex parte, in camera* review violated his sixth amendment right to confrontation. Specifically, he contends that such a review denied him his right to "confront witnesses against him."

The right of confrontation "provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987). *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). "[T]he right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Ritchie,* 480 U.S. at 52, 107 S.Ct. at 998 (emphasis in original). "The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id.* at 53, 107 S.Ct. at 999.

The circumstances in *Ritchie* are analogous to those presented here. In that case, the Supreme Court considered whether denying a criminal defendant access to records and reports maintained by a child protective agency violated the confrontation clause of the sixth amendment. The agency's records and reports were deemed confidential by state statute, and the defendant wanted to review the documents for the purpose of identifying any favorable witnesses or exculpatory evidence, and in order to conduct an effective cross-examination of the victim. The Court held that the defendant had no constitutional right to conduct a review of the documents, and

that the defendant's interest in a fair trial could be fully protected by the trial court's *in camera* review of the agency's records and disclosure of documents material to his defense. *Id.* at 58–60, 107 S.Ct. at 1001–1003. The Court reasoned that such a review best protected the interests of both the State and defendant. *Id.* at 60–61, 107 S.Ct. at 1002–1003.

In this case, the district court, in accordance with the Act, reviewed the application for surveillance order, the order, and supporting materials, and concluded that disclosure was not necessary for an accurate determination of the legality of the surveillance. 50 U.S.C. § 1806(f). *See Duggan,* 743 F.2d at 78. We have already affirmed this ruling.

We are also convinced that the protections afforded by the district court's *in camera* review are similar to those endorsed in *Ritchie.* Indeed, the Act provides even more protection than that in *Ritchie.* The application for a surveillance order requires a specific and extensive recitation of facts and must be submitted to one of seven specifically designated United States district judges. The order authorizing surveillance must comply with carefully drafted procedures. When the government files a motion to determine the legality of the surveillance, the application, order, and supporting materials must again be reviewed by a United States district judge. The *in camera, ex parte* review occurs only after the Attorney General of the United States submits an affidavit stating that disclosure would harm the national security of the United States. Thereafter, the record on appeal is reviewed by three judges of a federal appeals court. Accord-

ingly, we are satisfied that protections similar to those in *Ritchie* were provided here.[7]

We also note that the right of confrontation is "not absolute," and "may ... bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). *See, e.g., Maryland v. Craig,* —— U.S. ——, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666 (1990) (confrontation clause does not guarantee "criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial." (emphasis in original)) Courts often conduct *in camera* reviews in criminal proceedings when, as here, the defendant's right of confrontation is subordinated to competing interests of society. *See, e.g., Ritchie,* 480 U.S. at 60–61, 107 S.Ct. at 1002–1003. Although the interests at issue here are far different than those in *Ritchie,* similar considerations apply. "The governmental interests in gathering foreign intelligence are of paramount importance to national security." *Pelton,* 835 F.2d at 1075. In light of the substantial interests at stake and the protections provided to appellant by the Act, we conclude that appellant's sixth amendment rights were not violated.[8]

We affirm the judgment of the district court.

---

7. Another factor here, not present in *Ritchie* is that we are considering only the foundation for use of the tapes at Isa's criminal trial and the attendant issues of the legality of the surveillance order and the actual surveillance. Our decision today determines that the tapes may be introduced in the state proceedings, subject to the trial court's ruling on any state evidence questions that might arise. Thus, the tapes as evidence will then confront appellant in open court. At this stage, confrontation rights will be fully satisfied.

8. Moreover, all courts that have considered the constitutionality of such an *in camera, ex parte* examination have held such examinations proper. *See, e.g., United States v. Ott,* 827 F.2d 473, 476–77 (9th Cir.1987); *Badia,* 827 F.2d at 1464; *Duggan,* 743 F.2d at 78; *Belfield,* 692 F.2d at 147; *United States v. Spanjol,* 720 F.Supp. 55, 58–60 (E.D.Pa.1989); *United States v. Megahey,* 553 F.Supp. 1180, 1193–94 (E.D.N.Y.1982); *United States v. Falvey,* 540 F.Supp. 1306, 1315–16 (E.D.N.Y.1982).