# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3774

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Malik Al Mustafa El-Alamin, | * | |
| also known as Eric Britten, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: October 14, 2008
Filed: August 4, 2009

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Malik El-Alamin was convicted by a jury of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). El-Alamin was sentenced to a total of 262 months' imprisonment and five years of supervised release. On appeal, he alleges that the district court[1] erred in (1) failing to

_____

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota, in part adopting the Report and Recommendation of Susan Richard Nelson, United States Magistrate Judge for the District of Minnesota.

dismiss the indictment based on violations of the Speedy Trial Act; (2) failing to suppress evidence seized pursuant to an invalid search warrant; (3) refusing to permit him to present a justification defense; (4) admitting evidence of his prior convictions; (5) limiting cross-examination of an important adverse witness; (6) giving a jury instruction on flight; (7) denying his motion for judgment as a matter of law; (8) sentencing him as a career offender; and (9) imposing an unreasonable sentence. We affirm El-Alamin's conviction and sentence.

## I. Background

On April 17, 2006, Officer Kurt Radke of the Minneapolis Police Department applied to a Hennepin County judge for a warrant to search both the person of Malik El-Alamin and his presumed residence located on 30th Avenue North in Minneapolis. The warrant application was largely based upon information obtained from a confidential informant and a controlled buy of narcotics that took place within the 72-hour period preceding the application. The application also stated that El-Alamin had several arrests in Minneapolis including an arrest for obstructing police and that he was a "confirmed member of the Gangster Disciples street gang." Based on this information, a search warrant was issued.

Later that same day, police established surveillance at the 30th Avenue North residence in preparation for executing the warrant. After approximately twenty-five minutes of observation, El-Alamin arrived at the residence in a vehicle. He then exited the vehicle, along with a dog, and walked through a gated backyard into the back porch area of the residence. Approximately five minutes later, El-Alamin and the dog exited from the porch area and came out through the gated area. For the next five minutes or so El-Alamin stayed near his vehicle while the dog paced up and down the road. At this point, members of the police search team approached the residence and announced their presence to El-Alamin. El-Alamin, who had been standing still, saw the entry team approaching and began to run. He made it into the front yard of

the house directly to the south before being apprehended. Officers then searched El-Alamin and recovered a loaded nine millimeter handgun from his waistband area and 22.91 grams of cocaine base ("crack") from his pocket. Police also recovered cash totaling over five hundred dollars.

On April 19, 2006, El-Alamin was charged by complaint with being a felon in possession of a firearm in connection with the April 17th search. He entered his appearance that same day, at which time he was appointed counsel and ultimately detained. On June 13, 2006, the grand jury returned a two-count indictment. Count I charged El-Alamin with possession with intent to distribute cocaine base, and Count II repeated the firearm charge contained in the complaint. The district court ultimately dismissed Count II without prejudice due to pre-indictment delay in violation of the Speedy Trial Act, while allowing Count I to stand. On April 11, 2007, the government sought and obtained a superceding indictment charging the same two counts as in the original indictment. El-Alamin was eventually convicted by a jury of both counts and this appeal follows.

## II. Speedy Trial Act

El-Alamin advances two arguments concerning violations of the Speedy Trial Act. First, he argues that the district court's dismissal of the original indictment for violation of the Speedy Trial Act should have been with prejudice and should have included both counts. Second, he asserts that the time between his indictment and trial exceeded the seventy days permissible under the Speedy Trial Act. "We review a district court's findings of fact concerning any negligent delay [under the Speedy Trial Act] for clear error and its legal conclusions on that issue de novo." United States v. Contreras, 341 F.3d 791, 793 (8th Cir. 2003). "A defendant has the burden of proof to show that his statutory right to a speedy trial has been violated." United States v. Williams, 557 F.3d 943, 950 (8th Cir. 2009).

The Speedy Trial Act requires that an indictment or information be filed against the defendant within thirty days of arrest or summons. See 18 U.S.C. § 3161(b). If the government fails to indict within the thirty-day period, the charge is subject to dismissal. Id. Dismissals for speedy trial violations can be made with or without prejudice. See United States v. Richardson, 537 F.3d 951, 957 (8th Cir. 2008), cert. denied, 129 S.Ct. 2378 (2009). In deciding whether a dismissal with prejudice is proper, the court considers the following non-exhaustive factors: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re-prosecution on the administration of [speedy trial laws] and on the administration of justice." Id. (quoting 18 U.S.C. § 3162(a)(2)).

Here, El-Alamin was charged by complaint with being a felon in possession of a firearm on April 19, 2006, and he was arrested the same day. He was not indicted until June 13, 2006, thus resulting in a technical violation of the Speedy Trial Act as to that charge. El-Alamin moved to have the entire indictment dismissed based on this violation. The district court concluded that the pre-indictment delay was due to desire on the part of both parties to reach a plea agreement. The court found that the parties had engaged in plea negotiations in both May and June, and that El-Alamin was indicted on June 13, 2006 after the negotiations proved unsuccessful. The district court further noted that El-Alamin's counsel had filed a waiver of El-Alamin's speedy trial rights. Although El-Alamin disputes the validity of the waiver, its existence weighs against the seriousness of the government's error in failing to timely indict El-Alamin. After concluding that the firearm charge contained in Count II of the indictment was a sufficiently serious offense, the district court determined that dismissal without prejudice was the appropriate remedy. The district court properly considered the relevant factors and we find no error in its conclusion.

El-Alamin also takes exception with the district court's decision not to include the drug charge in its dismissal for pre-indictment delay. The drug charge, however, was not included in the complaint and therefore the speedy trial clock had not begun

as to that charge.  See 18 U.S.C. § 3162(a)(1) (requiring that if the indictment is not filed within the requisite time period then "such charge against that individual contained in such complaint shall be dismissed or otherwise dropped") (emphasis added).  There was no pre-indictment violation of the Speedy Trial Act regarding Count I of the indictment.

Finally, El-Alamin asserts an additional violation of the Speedy Trial Act based on post-indictment delay.  In the case of post-indictment delay, the Speedy Trial Act "requires that a federal criminal defendant be brought to trial within 70 days of the filing of the indictment or of arraignment, whichever is later."  United States v. DeGarmo, 450 F.3d 360, 362 (8th Cir. 2006) (internal quotation marks omitted).  Certain events, however, toll the speedy trial clock and result in the exclusion of time from the 70-day period.  Id.  One such instance where the clock is tolled is during "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," Id. (quoting a previous version 18 U.S.C. § 3161(h)(1)(D)).

In this case, the parties' dispute concerns whether the district court was correct in excluding two separate periods of time from its speedy trial calculation.  First, El-Alamin argues that the district court erred in excluding the time during that his pro se motion to dismiss was pending.  Second, he argues that the district court improperly excluded time based on his attorney's unauthorized filing of a speedy trial rights waiver.  After El-Alamin adds back in these two periods, he claims that a total of 95 days of non-excludable time elapsed prior to his trial.

El-Alamin challenges the district court's exclusion of time during the pendency of his pro se motion to dismiss filed on October 4, 2006.  The district court ultimately denied the pro se motion on November 13, 2006, declining to entertain its merits because El-Alamin was represented by counsel.  El-Alamin argues that it was improper for the district court to exclude time related to a motion it would ultimately

refuse to rule on. The case law, however, clearly rejects this argument. In <u>Williams</u>, we explained that "every motion filed by a defendant, whether or not it is frivolous and whether or not he is represented at the time of filing, tolls the speedy trial clock." 557 F.3d at 952. Thus, the district court was correct that the speedy trial clock was tolled during the pendency of this motion. As the government now concedes, however, the amount of time excludable in relation to this motion is limited to 30 days because a hearing on the motion was not required nor was one afforded to El-Alamin. <u>See</u> 18 U.S.C. §§ 3161(h)(1)(D) and (J). Nonetheless, after excluding the thirty days attributable to this motion, even using El-Alamin's remaining calculations, he was brought to trial within the 70 days allowed under the Speedy Trial Act. Accordingly, we need not reach the waiver issue. There was no post-indictment speedy trial violation.

### III. <u>Search Warrant</u>

El-Alamin argues that the district court erred in failing to suppress evidence obtained during the search of his residence and person. He claims that the search warrant was invalid because the affidavit offered in support of the warrant failed to establish the required nexus between the alleged criminal activity and the residence to be searched. In response, the government argues that the warrant was supported by probable cause and that, even if we were to conclude otherwise, the <u>Leon</u> good-faith exception should apply to allow admission of the evidence. <u>See</u> <u>United States v. Leon</u>, 468 U.S. 897 (1984). "On appeal from the denial of a motion to suppress, we review a district court's findings of fact for clear error," and its legal conclusions-including its probable cause determination-de novo. <u>United States v. Grant</u>, 490 F.3d 627, 631 (8th Cir. 2007), <u>cert. denied</u>, 128 S.Ct. 1704 (2008).

An affidavit provides probable cause to issue a search warrant if it "sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Id.</u> (internal

quotation marks and citations omitted). Whether an affidavit establishes probable cause is determined by the issuing judge based on the totality of the circumstances. Id. "Accordingly, we examine the sufficiency of a search-warrant affidavit using a common sense and not a hypertechnical approach. Id. at 632 (internal quotation marks and citations omitted).

Here, Officer Radke applied for a warrant to search El-Alamin's presumed residence. In support of the warrant, he submitted a sworn affidavit citing information gleaned from a Confidential Reliable Informant ("CRI"). The affidavit contained the following information concerning the CRI: (1) the CRI was familiar with an individual by the same name as El-Alamin who sold cocaine in Minneapolis; (2) the CRI confirmed that the individual he was referring to was El-Alamin by positively identifying him in a photograph furnished by investigators; (3) the CRI told law enforcement that he had a telephone number he used to contact El-Alamin in order to purchase drugs; (4) the CRI, at the direction of law enforcement, contacted El-Alamin at that same telephone number and arranged to purchase cocaine; (5) the CRI then engaged in a controlled buy with El-Alamin; (6) after the controlled buy, surveillance followed El-Alamin directly back to his residence where he was observed keying his way into the back door; and (7) the CRI had purchased cocaine from within the residence in the past. The affidavit also stated that El-Alamin was a confirmed member of the Gangster Disciples street gang, had an extensive criminal history including narcotics and weapons arrests, and had previously been arrested for obstructing police.

El-Alamin argues that this information was insufficient to establish the required nexus between his residence and criminal activity. We disagree. The information outlined above is sufficient to "lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime" would be found at El-Alamin's residence. See Grant, 490 F.3d at 631. The affidavit provided sufficient facts to determine that the stated location was El-Alamin's residence, that he went

immediately to that residence following a controlled buy and, therefore, contraband in the form of drug proceeds might be found there, and that such transactions had occurred there in the past. El-Alamin also argues that information learned from the CRI should only be given "slight" weight because the affidavit did not provide information about the confidential informant's reliability or criminal history. The affidavit, however, provided indicia of the CRI's reliability by explaining how the CRI's knowledge of El-Alamin's telephone number was corroborated and led to a successful controlled buy. The affidavit was sufficient to establish probable cause.

However, even if we were to conclude that the affidavit was insufficient, the Leon good-faith exception permits admission of the evidence. "Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." Grant, 490 F.3d at 632 (citing Leon, 468 U.S. at 922). Here, nothing in the record indicates that it was not reasonable for Officer Radke to rely on the judge's probable cause determination. Accordingly, the evidence gained from the search was admissible pursuant to the Leon good-faith exception.

El-Alamin also argues that the district court erred in denying him a hearing, under Franks v. Delaware, 438 U.S. 154 (1978), to challenge the search warrant. "We review the denial of a Franks hearing for abuse of discretion." United States v. Kattaria, 553 F.3d 1171, 1177 (8th Cir. 2009) (per curiam) (en banc). A defendant is entitled to a Franks hearing only after making a substantial preliminary showing that "the probable cause determination relied on an affidavit containing false statements or omissions made knowingly and intentionally or with reckless disregard for the truth." United States v. Snyder, 511 F.3d 813, 816 (8th Cir.), cert. denied, 128 S.Ct. 2947 (2008). "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient

to make the difficult preliminary showing." United States v. Mathison, 157 F.3d 541, 548 (8th Cir. 1998) (citing Franks, 438 U.S. at 171).

On appeal El-Alamin alleges that the following three statements contained in the warrant affidavit were false: (1) that the CRI purchased cocaine from inside his residence in the past; (2) that he returned to his residence after the controlled buy; and (3) that he is a confirmed member of the Gangster Disciples street gang. The district court concluded that El-Alamin's challenge of these statements was "self-serving" and without any evidentiary support. We agree. El-Alamin did not come forward with a sufficient offer of proof in support of his conclusory allegations. He also failed to explain how Officer Radke's use of the information was deliberate or reckless. In particular, El-Alamin has not come forward with anything to indicate that Officer Radke knew the information to be false or was unjustified in relying on it. Further, the affidavit in support of the warrant would have been sufficient to establish probable cause absent the challenged statements. Accordingly, El-Alamin failed to make the difficult preliminary showing required for a Franks hearing. The district court did not abuse its discretion.

## IV. Pre-trial and Trial Issues

El-Alamin argues that the district court erred by refusing to allow him to present a defense of justification regarding the § 922(g) firearm charge. "We review de novo a district court's decision whether there is sufficient evidence to submit an affirmative defense to a jury." United States v. Hudson, 414 F.3d 931, 933 (8th Cir. 2005). Thus far, "[t]his circuit has not recognized a defense of legal justification to a violation of § 922(g)." Id. Even assuming such a defense is available in the context of § 922(g), El-Alamin failed to present sufficient evidence to warrant a justification instruction. To establish a defense of justification the defendant must demonstrate an "underlying evidentiary foundation" as to each of the following elements:

> 1) he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; 2) that he had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to commit a criminal act; 3) that he had no reasonable, legal alternative to violating the law; and 4) that a direct causal relationship may be reasonably anticipated between the commission of the criminal act and the avoidance of the threatened harm.

Id. (quoting United States v. Lomax, 87 F.3d 959, 961 (8th Cir. 1996)).

El-Alamin's proffer concerning these elements was inadequate. He testified that he had been the victim of prior violent incidents in and around his neighborhood and that when he returned home on the day of his arrest to find the back door open, he feared an intruder was inside. El-Alamin testified that he first grabbed a knife to defend himself but then decided to get a gun because he feared for his life.

Assuming that El-Alamin made an adequate showing as to the other elements, he failed to demonstrate that he lacked a reasonable, legal alternative to violating the law. "[I]f there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the third element required for a justification instruction has not been satisfied." Hudson, 414 F.3d at 934 (internal quotation marks and citations omitted). Here, El-Alamin noticed that the door was open prior to entering the home. At that point, he could have refrained from entering the residence and called the police. Once inside, El-Alamin did not have to upgrade his weapon from a knife to a firearm. The district court did not err in refusing to instruct the jury on a defense of justification.

Next El-Alamin argues that the district court erred in allowing the government to impeach him with his convictions for aggravated robbery and a drug crime. Before trial, El-Alamin filed a motion in limine seeking to exclude any reference to his previous convictions. After determining the type and date of the convictions, the

-10-

district court ruled that El-Alamin's 1998 aggravated robbery conviction and 1997 drug conviction were admissible for impeachment purposes under Federal Rule of Evidence 609(a)(1). However it was El-Alamin, not the government, who first introduced the convictions at trial. El-Alamin testified about the convictions during his own direct examination. Only then did the government seek to impeach El-Alamin's testimony concerning the convictions. By choosing to preemptively introduce the convictions, El-Alamin waived his right to appeal the trial court's denial of his motion in limine. See United States v. Walter, 461 F.3d 1005, 1009 (8th Cir. 2006) ("Because [the defendant] elected to address his prior conviction on direct examination, he forfeited the right to relief on this issue.") (citing Ohler v. United States, 529 U.S. 753, 760 (2000)). The district court did not err.

El-Alamin also finds error with the district court's decision not to order disclosure of the contents of Officer Radke's investigative file. The file contained information concerning the controlled buy that allegedly took place between a confidential informant and El-Alamin which was described in the search warrant application. El-Alamin claims that the district court's decision not to turn over the file violated his Sixth Amendment confrontation rights. More specifically, he claims that his cross-examination of Officer Radke was impermissibly limited because he could not question him concerning information in the file without knowing what was in it. We will only reverse the trial court's decision to limit cross-examination upon a showing of clear abuse of discretion and prejudice to the defendant. See United States v. Brown, 110 F.3d 605, 611 (8th Cir. 1997).

"The right of confrontation 'provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination.'" United States v. Isa, 923 F.2d 1300, 1306 (8th Cir. 1991) (quoting Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987)). These rights are "designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." Ritchie, 480 U.S. at 52 (emphasis in

original).  "The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." Id. at 53.  Here, El-Alamin was not prevented from cross-examining Officer Radke concerning the file's existence or content. Rather, El-Alamin claims, the effectiveness of his cross-examination was limited by his lack of knowledge of the contents of the file.  Given the district court's in camera examination of the file and conclusion that there was "nothing relevant in the file for the defense," we find no violation of El-Alamin's right to confrontation.  See Isa, 923 F.2d at 1307 (discussing protection provided by the district court's in camera review of material and finding no confrontation violation).

El-Alamin next argues that the district court erred by giving a jury instruction concerning his flight at the time of his arrest.  We review a district court's decision whether to instruct the jury on flight for an abuse of discretion.  United States v. Webster, 442 F.3d 1065, 1067 (8th Cir. 2006).  "A flight instruction may be given when such an instruction is warranted by the evidence presented at trial." Id.  Here, the government presented evidence that El-Alamin was standing still until he saw the search team, at which time he began to run.  El-Alamin, however, claims that he fled because of concerns that his house had been broken into and "the chaos that ensued" when the police attempted to apprehend him.  "That [El-Alamin] may have had other possible reasons for fleeing from police 'does not render evidence of the flight inadmissible to show consciousness of guilt' of the crime charged." Id. (quoting United States v. Roy, 843 F.2d 305, 310 (8th Cir. 1998)).  The flight instruction correctly stated the law and was warranted by the evidence.  The district court did not err.

Finally, El-Alamin argues that the district court erred in denying his motion for judgment as a matter of law on the narcotics charge.  He asserts that the government's evidence was insufficient to prove he intended to distribute the 22.91 grams of crack found on his person.  "[We] review the sufficiency of the evidence de novo, viewing

-12-

evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Barker, 556 F.3d 682, 687 (8th Cir. 2009) (internal quotation marks and citations omitted). "[W]e will uphold the verdict if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." Id.

Here, El-Alamin admitted possession of the crack cocaine at trial and only disputes whether he possessed the requisite intent to distribute. The government produced expert testimony that the amount of crack found, along with its packaging, was consistent with distribution. The government also produced evidence that El-Alamin was carrying several hundred dollars cash and a loaded nine millimeter handgun. In addition, he was not found to be in possession of any type of paraphernalia commonly used to ingest crack. Viewed in the light most favorable to the verdict, the government produced sufficient evidence from which the jury could conclude that El-Alamin possessed the crack with the intent to distribute it.

## V. Sentencing

El-Alamin argues that the district court erred by sentencing him as a career offender. We review the district court's application of the United State's Sentencing Guidelines de novo. United States v. Brown, 550 F.3d 724, 728 (8th Cir. 2008). A defendant is regarded as being a career offender under § 4B1.1(a) of the Guidelines if: "(1) the defendant was at least eighteen years of age at the time the felony was committed, (2) the felony is either a crime of violence or controlled substance offense, and (3) the defendant has two prior felony convictions for a crime of violence or controlled substance offense." United States v. Parks, 561 F.3d 795, 797 (8th Cir. 2009) (per curiam) (internal quotation marks omitted). El-Alamin does not dispute that the first two requirements are met. He does, however, take issue with the two prior felonies relied upon by the district court in sentencing his as a career offender.

-13-

Specifically, El-Alamin argues that his 1998 state court convictions for two counts of first degree aggravated robbery were obtained in violation of his Due Process rights and therefore cannot support the finding that he is a career offender. His Due Process argument centers around his claim that he was denied the opportunity to speak at his sentencing hearing. In general, one cannot collaterally attack a prior state conviction during a federal sentencing proceeding. See Custis v. United States, 511 U.S. 485 (1994) (prohibiting collateral attack of prior state convictions used to enhance a sentence under the armed career criminal provision of the Guidelines); see also United States v. Moore, 178 F.3d 994, 997 (8th Cir. 1999) (applying Custis in the career offender context). Although certain exceptions do exist, none of those exceptions apply here. E.g., 21 U.S.C. § 851 (provides that a defendant may collaterally attack certain prior convictions). In addition, El-Alamin has challenged his 1998 convictions in numerous state court proceedings and his claims were found to be without merit. The district court did not err in sentencing El-Alamin as a career offender.

Lastly, El-Alamin appeals his sentence, arguing that the district court failed to give appropriate weight to his mental health and family history. We review the sentence for abuse of discretion. Gall v. United States, 128 S. Ct. 586, 597 (2007). First we ensure that the district court made no significant procedural error. Id. "A sentencing court abuses its discretion if it fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." United States v. Starfield, 563 F.3d 673, 676 (8th Cir. 2009) (internal quotations and citation omitted). If no significant procedural error is found, we then consider the totality of the circumstances in determining if an abuse of discretion occurred. Gall, 128 S. Ct. at 597. A sentence within the advisory Guidelines range may be presumed reasonable on appeal. Id.

Here, El-Alamin was sentenced to 262 months' imprisonment, the low end of his Guidelines range. A careful review of the record reveals that the district court adequately considered and weighed all relevant factors. See 18 U.S.C. § 3553(a). The

-14-

district court specifically discussed El-Alamin's background and mental health and concluded that, notwithstanding those issues, a 262-month sentence was appropriate under the circumstances. The district court did not abuse its discretion in arriving at this reasonable sentence. See United States v. Sigala, 521 F.3d 849, 851 (8th Cir. 2008) (affirming sentence where "the court listened to [the defendant's] arguments, but simply found the proffered circumstances insufficient to warrant a sentence lower than the advisory sentence").

## VI. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

_____