IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32306-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SERVANDO ALONSO FLORES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Servando Alonso Flores challenges a search warrant for a mobile

home in which drug task force officers found controlled substances. He also challenges

the sufficiency of evidence to convict him of manufacturing marijuana. We reject both

contentions and affirm his convictions.

FACTS

On March 26, 2013, the Columbia River Drug Task Force (task force) arrested a

gentleman in Wenatchee for possessing methamphetamine with intent to deliver and for

driving with a suspended license. The gentleman had a lengthy criminal history in

Washington, Oregon, New York, and South Dakota, which history included convictions

for narcotics, theft, forgery, bail jumping, and insurance fraud. In exchange for amelioration of charges arising from his conduct in Wenatchee, the gentleman agreed to cooperate as a confidential informant for the task force. The task force named him "Informant 599."

Informant 599 sang like a canary and revealed to the task force details about his methamphetamine suppliers, the criminal organization to which the suppliers belonged, and the location of the organization's base of operations. The base was a mobile home located at 16258 NW Road 1, Quincy. The task force researched and discovered that Vianey Villa Ambriz' driver's license listed 16258 NW Road 1 as his address. Informant 599 also physically described "Wedo," the leader of the organization, who the task force believed was Ambriz.

Informant 599 identified "Alonso" as a primary contact in the criminal organization, but stated that Alonso fled to Mexico after law enforcement seized a large amount of his cash during an arrest in 2011. The task force researched and identified "Alonso" as defendant Servando Alonso Flores.

On March 27, 2013, Informant 599 began conducting controlled buys for the task force. Between March 27 and May 30, 2013, the task force completed eight controlled purchases of methamphetamine from the organization Informant 599 identified.

In May 2013, Alonso resurfaced in Wenatchee and offered to sell Informant 599 methamphetamine. Informant 599, without notifying the task force, accompanied

2

another Wenatchee area methamphetamine dealer to the organization's mobile home in Quincy in order to purchase methamphetamine from Alonso. Informant 599 later reported to the task force that Alonso possessed no methamphetamine, but another unidentified Hispanic man sold Informant 599 heroin.

On June 7 and June 11, 2013, Informant 599 assisted the drug task force in two controlled buys from members of Servando Alonso Flores' and Vianey Ambriz' organization. Informant 599, on both days, purchased methamphetamine from suppliers at a Shell station near the Quincy mobile home. In an affidavit in support of a search warrant, Jeff Dilks, a Chelan County Sheriff's Office Detective and member of the task force, declared he observed the following on June 7:

> At 1608 hours, a gray Ford pickup, WA license B27875U, entered the parking lot. *It came from behind me, so I do not know where it came from.* It was occupied by two Hispanic males. The pickup parked next to the informant's vehicle so that its passenger side was next to the informant's driver's side. The Hispanic male passenger got out of the pickup and walked to the informant's driver's door. I saw a brief hand to hand exchange before the suspect returned to the pickup. Because I was trying to relay my observations to [Detectives] Orrell & Giacomazzi while watching the transaction, I did not get a great view of the suspect, even though I was watching through binoculars. He was about 5'10", 240 pounds, appeared to be in his late 20's to mid 30's, and wore a white tank top.
> The suspect returned to the pickup and they remained parked next to each other for about a minute. The pickup then pulled out of the parking lot and traveled west on NW Road 1 toward the trailer. I had asked Detective Giacomazzi to follow the pickup after the transaction. The trailer at 16258 NW Road 1 is less than one-quarter of a mile from the gas station. The pickup was parked unoccupied in the driveway directly in front of the trailer by the time Giacomazzi drove by. Giacomazzi was only 30 to 45

seconds behind the pickup, so the two occupants would have had to enter the trailer after getting out of the pickup.

CP at 39 (emphasis added).

In the same affidavit, Detective Dilks averred that he observed the following on

June 11:

> We waited at the gas station for the next 45 minutes, but the Ford pickup did not arrive. Gordo would not answer his phone. I told the informant to call Gordo's boss, "Wedo", & complain. Wedo did not answer. The informant offered to go directly to the trailer to see who might be there.
>
> At 2032 hours, the informant drove the short distance to the trailer. All 5 CRDTF [task force] members drove by the trailer at intervals. I saw the informant leaning on his vehicle talking to a Hispanic male in the front yard. The Hispanic male had a cell phone to his ear. The informant later told me that this was Wedo. During subsequent passes, we could not see the informant or the Hispanic male in the front yard, so we assumed that he had either gone inside the trailer or was sitting in his vehicle.
>
> A short time later, both the informant and the Hispanic male were sitting on the front porch of the trailer. The informant left the trailer and returned to the gas station at about 2045 hours. He called me to tell me that Wedo had suggested that he could go to Bridgeport to buy methamphetamine from Wedo's cousin.
>
> As the informant was telling me this, the gray Ford pickup, WA license B27875U, arrived at the gas station. The Hispanic male driver was the sole occupant. The pickup drove to the dirt parking lot on the west side and the informant followed. The informant parked on the passenger side of the pickup, got out of his vehicle, and into the passenger side of the pickup at about 2049 hours. He was inside the pickup for about a minute before he returned to his vehicle.
>
> The pickup left the gas station parking lot and drove directly to the trailer at 16258 NW Road 1. The driver got out of the pickup and walked to the front door of the trailer. He was last seen by Sgt. Foreman with his hand on the door knob as if he were about to enter the trailer.
>
> I contacted the informant while still at the gas station. He gave me a plastic bag that contained approximately 28 grams of methamphetamine

4

(field test positive). I followed the informant back to Wenatchee and searched him at approximately 2146 hours. I also searched his vehicle.

The informant told me that he was surprised when Wedo greeted him at the trailer. The informant complained that he had arranged to meet Gordo at the gas station and that Gordo had failed to appear. Wedo tried to call Gordo but received no answer. Wedo told the informant that Alonso was inside the trailer and might be able to help him. The informant went inside the trailer and found Alonso in a back bedroom. Alonso was smoking methamphetamine in a glass pipe. He offered some to the informant, but the informant claims that he declined. Alonso showed the informant a bag that contained approximately 1/8 ounce of methamphetamine and told the informant, "This is what you'd get" if the informant bought an ounce from him. The informant declined because of his previous experience with Alonso at the trailer, where Alonso could not produce any methamphetamine and delivered heroin instead.

CP at 40-41.

In concluding his affidavit, Detective Jeff Dilks stated:

Suspects in two separate controlled purchases of methamphetamine on June 7 & June 11, 2013 have gone directly to the trailer at 16258 NW Road 1 immediately after the transactions. Based on my training & experience I believe that the suspects took the CRDTF recorded buy money back to someone at the trailer, and that this money, as well as the proceeds from other drug sales, are kept in the trailer. The informant has provided information that Vianey Villa Ambriz, AKA "Wedo", has used this trailer as base for drug trafficking for over one year. On June 11, the informant saw Servando Alonso Flores, AKA "Alonso", smoking methamphetamine in the trailer. Flores had an estimated 1/8 ounce of methamphetamine in his possession.

Based on the above information I have probable cause to believe that the trailer at 16258 is used to facilitate drug trafficking and that methamphetamine and/or the proceeds of methamphetamine sales are kept inside the trailer.

CP at 41-42.

5

Based on Jeff Dilks' affidavit, the task force sought a search warrant in Chelan County Superior Court to search: (1) the mobile home located at 16258 NW Road 1, Quincy, (2) the pickup truck in which Informant 599's suppliers arrived during the controlled buys, (3) the person of Vianey Villa Ambriz, and (4) the person of Servando Alonso Flores. The superior court granted the search warrant. Jeff Dilks did not sign the affidavit before the superior court signed the warrant.

On June 12, 2013, the task force executed the search warrant at the Quincy mobile home. Task force members knocked and, when no one answered, opened the door with a battering ram. The officers found no one inside the home. In a locked bedroom, officers found a paystub belonging to Servando Alonso Flores, a red digital scale with a white powdery residue thereon, a plastic bag, a safe containing a transactions ledger, and a plastic toy duck containing twenty two grams of methamphetamine.

In the search of the remainder of the mobile home, the task force found money transfer receipts, a bag of root starter material for plants, a wooden table and a grow light, plastic starter plant trays, strands of twine draped across the living room ceiling, and a bag of chicken feed. In the kitchen, the task force found a title for a 1990 Chevy K1 pickup registered to Vianey Villa Ambriz. They found coffee filters but no coffee pot. The task force also found a container of methylsulfonylmethane, a container of inositol powder, a jug of acetone, and fertilizer. The task force found, adjacent to the mobile home, animal pens and chicken coops containing forty nine marijuana starter plants

6

approximately six to twelve inches tall.

During the task force search, Vianey Villa Ambriz and Servando Alonso Flores fortuitously drove into the driveway in a 1990 Chevy K1 pickup. As two task force members approached the car, the officers saw two marijuana plants near Flores' feet similar in size and appearance to the marijuana plants discovered in the chicken coop. The task force arrested Villa and Flores.

## PROCEDURE

The State of Washington charged Servando Alonso Flores with one count of manufacturing marijuana and one count of possession of methamphetamine. The State later amended the charges to add one count of possession of methamphetamine with intent to deliver in a protected zone.

Servando Alonso Flores filed a CrR 3.6 motion to suppress all evidence obtained during the search of the mobile home and his body. He argued that the search warrant was not based on probable cause.

The trial court granted Servando Alonso Flores' motion to suppress because Detective Jeff Dilks failed to sign the probable cause affidavit. In so ruling, however, the trial court noted that Detective Dilks' observations of Informant 599's suppliers returning directly to the Quincy mobile home after the June 7 and June 11 controlled buys established probable cause, citing an Eighth Circuit Court of Appeals case, *United States v. El-Alamin*, 574 F.3d 915 (8th Cir. 2009). In addition, the trial court observed that

7

Informant 599's statements to the task force, about observing Flores smoking methamphetamine, did not establish probable cause to search Flores' person due to the informant's lack of proven reliability.

The State filed a copy of the affidavit signed by Jeff Dilks and moved the trial court to reconsider its decision to grant Servando Flores' motion to suppress. The trial court modified its earlier ruling by allowing evidence obtained through the search of the mobile home. The trial court confirmed its ruling suppressing evidence obtained through the search of Flores' person. The State does not appeal the latter ruling.

A jury found Servando Alonso Flores guilty of all charges, and found by special verdict that Flores possessed a controlled substance with intent to deliver within one thousand feet of a school bus route stop. The trial court sentenced Flores to sixty four months of confinement on the conviction for possession with intent to deliver methamphetamine within one thousand feet of a school bus route stop. The trial court dismissed Flores' other conviction for possession of methamphetamine as merging with this count. Flores received a twelve month sentence for the charge of manufacturing marijuana.

## LAW AND ANALYSIS

On appeal, Servando Alonso Flores argues: (1) probable cause did not support the search warrant issued by the trial court for the Quincy mobile home, and (2) insufficient

evidence supports the jury's verdict declaring him guilty of manufacturing marijuana. He asks this court to reverse his convictions. We reject both arguments.

Probable Cause

Servando Flores argues that task force observations of two of Informant 599's methamphetamine suppliers returning to the mobile home after the June 7 and June 11 sales do not establish probable cause to search the home. Flores emphasizes that none of the controlled buys arranged by the task force involved Flores or occurred at the trailer location and that the confidential informant lacked a history of reliability to support his allegations. The State responds that trailing the methamphetamine suppliers to the Quincy mobile home after the controlled buys justified issuance of a warrant.

The Fourth Amendment and article I, section 7 of our state constitution require that a search warrant issue only upon a determination of probable cause by a neutral magistrate. *State v. Myers*, 117 Wn.2d 332, 337, 815 P.2d 761 (1991). Probable cause exists where there are facts and circumstances sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched. *State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004). Probable cause requires (1) a nexus between criminal activity and the item to be seized, and (2) a nexus between the item to be seized and the place to be searched. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). The affidavit of probable cause must show criminal activity is at least probable. *State v. Ellis*,

9

178 Wn. App. 801, 805-06, 327 P.3d 1247 (2014). Evidence obtained from a warrant issued without sufficient probable cause should be suppressed under the fruit of the poisonous tree doctrine. *State v. Eisfeldt*, 163 Wn.2d 628, 640, 185 P.3d 580 (2008). The trial court's assessment of probable cause is a legal conclusion we review de novo. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008).

Servando Alonso Flores argues that the trial court's reliance on *United States v. El-Alamin*, 574 F.3d 915 (8th Cir. 2009) was misplaced. He urges this court to instead look to *State v. G.M.V.*, 135 Wn. App. 366, 144 P.3d 358 (2006), which he maintains requires that officers observe an individual both leaving from and returning to a residence before a nexus can be established between the criminal activity and the place to be searched.

In *United States v. El-Alamin*, the Eighth Circuit held that an affidavit established probable cause to search Malik El-Alamin's residence. An officer witnessed El-Alamin participate in a controlled narcotics buy with a confidential informant and then return directly to his home after the transaction. Before the controlled buy, the confidential informant identified El-Alamin, disclosed that El-Alamin belonged to the Gangster Disciples street gang, and stated he made drug purchases in the past from El-Alamin at his residence. The appeals court held that such information was sufficient to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime would be found in El-Alamin's residence.

10

The facts in *El-Alamin*, while similar, differ from the case on appeal because none of the controlled buys organized by the drug task force involved Servando Alonso Flores or Vianey Villa Ambriz. Nor did the task force have evidence that the suppliers at the June 7 and June 11 controlled buys originated from the Quincy mobile home before seeing them return to the home after the sales. *El-Alamin* was based on more than officers' observations of El-Alamin returning to his house after a controlled buy. Officers relied on their informant's statements that he purchased cocaine from El-Alamin at his residence in the past and the officers confirmed the confidential informant's disclosure that El-Alamin was a member of the Gangster Disciples street gang. In the case on appeal, Informant 599 had not yet proven reliable.

*State v. G.M.V.*, 135 Wn. App. 366 (2006) helps Alonso Flores' case, but not enough to justify reversal of the trial court's decision to deny his motion to suppress evidence obtained in the search of the Quincy mobile home. In *G.M.V.*, we determined that probable cause supported issuance of a search warrant for G.M.V.'s parents' home based on her boyfriend Ivan Longoria's participation in controlled buys with police in Moses Lake. Longoria, who lived with G.M.V. at her parents' home, sold marijuana to a confidential police informant. Law enforcement officers twice observed Longoria leave the home, drive directly to the sale location, and return directly to the home after the sale. Nevertheless, we did not hold that observations of leaving and returning to the home were a requirement for probable cause.

11

In the case on appeal, task force officers lacked evidence that the two suppliers lived at the mobile home or came from the home before the sale. Nevertheless, observations that the suppliers returned to the Quincy home corroborate Informant 599's earlier disclosures that the criminal organization utilized the mobile home as a base of operations. Observance of the suppliers returning to the mobile home after both controlled buys provided the requisite nexus between the items to be seized and the location to be searched. A reasonable person would conclude that the mobile home likely contains evidence of a crime.

Sufficiency of Evidence

Servando Alonso Flores next contends that insufficient evidence supports his conviction for manufacture of marijuana. We disagree.

Evidence is sufficient if, after viewing it in the light most favorable to the State, a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Witherspoon*, 180 Wn.2d 875, 883, 329 P.3d 888 (2014); *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). A defendant challenging sufficiency of the evidence at trial admits the truth of the State's evidence and all reasonable inferences therefrom. *Witherspoon*, 180 Wn.2d at 883. A verdict may be supported by either circumstantial or direct evidence, as both may be equally reliable. *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986).

A jury may draw inferences from evidence so long as those inferences are rationally related to the proven facts. *State v. Jackson*, 112 Wn.2d 867, 875, 774 P.2d 1211 (1989). A rational connection must exist between the initial fact proven and the further fact presumed. *Jackson*, 112 Wn.2d at 875. An inference should not arise when other reasonable conclusions follow from the circumstances. *State v. Bencivenga*, 137 Wn.2d 703, 711, 974 P.2d 832 (1999). The jury may infer from one fact the existence of another essential to guilt, if reason and experience support the inference. *Tot v. United States*, 319 U.S. 463, 467, 63 S. Ct. 1241, 87 L. Ed. 1519 (1943).

A conviction for manufacture of a controlled substance requires the State to prove beyond a reasonable doubt that the accused manufactured marijuana and knew the substance manufactured was marijuana. RCW 69.50.401(2)(c). "Manufacture" means "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance . . . and includes any packaging or repackaging of the substance or labeling or relabeling of its container." RCW 69.50.101(s). "Production" includes the "manufacturing, planting, cultivating, growing, or harvesting of a controlled substance." RCW 69.50.101(gg).

Servando Alonso Flores argues that *State v. Olson*, 73 Wn. App. 348, 869 P.2d 110 (1994), supports dismissal of his conviction for manufacturing marijuana. In *Olson*, this court held that sufficient evidence supported David Olson's conviction for manufacturing marijuana. The State provided evidence that officers observed Olson visit

13

the location of a marijuana grow operation on two occasions; that Olson retrieved a hidden key in order to access the location; and that items connected to the grow operation carried Olson's fingerprints. Based on this evidence, the court determined that evidence was sufficient to establish that Olson knowingly participated in the grow operation.

In the case on appeal, the evidence sufficed for a jury to find the elements of marijuana manufacturing beyond a reasonable doubt. In its search of the mobile home, task force officers found forty nine baby marijuana plants in a chicken coop outside the mobile home, marijuana grow supplies inside the mobile home, and evidence that Flores inhabited one of the bedrooms in the mobile home. The State presented even more incriminating evidence with the officers' observing marijuana plants of the same age as those in the chicken coop at Flores' feet in the truck in which he arrived at the Quincy mobile home. Although some evidence was circumstantial, the jury could reasonably infer Flores' knowing participation in the manufacture of marijuana.

## CONCLUSION

We affirm the trial court's denial of Servando Flores' motion to suppress and his conviction for manufacturing marijuana.

A majority of the panel has determined this opinion will not be printed in the

No. 32306-4-III
*State v. Flores*

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.

15