# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3288

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| Glenn Brian Carpenter, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: February 11, 2003

Filed:  September 2, 2003

_____

Before WOLLMAN, RICHARD S. ARNOLD, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Defendant-Appellant Glenn Brian Carpenter appeals the district court's[1] adverse ruling on his motion to exclude evidence seized during the warranted search of a residence.  We affirm.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, affirming the Report and Recommendation of the late United States Magistrate Judge John H. Mason.

On January 31, 2002, officer Andy Shoemaker of the Minnesota Gang Strike Force applied for and received a state warrant to search the residence of Christine Jean Fleischauer for drugs, paraphernalia, weapons, records, and related items. In his affidavit to support the application, Officer Shoemaker described information received from a Confidential Reliable Informant (CRI), his reasons for believing the CRI to be reliable, and the steps taken to verify the CRI's information. Shoemaker explained that he and other members of the Strike Force had used the CRI on "numerous previous investigations," that the assistance of the CRI had led to an arrest and conviction for drug possession and distribution, that other confidential informants had corroborated previous information from the CRI, that no information previously provided by the CRI had been shown to be false, and that he considered the CRI's information to be reliable.

According to Shoemaker's affidavit, the CRI reported that an adult white female named Christie, whom the CRI knew and with whom the CRI had a relationship, was currently in possession of an amount of methamphetamine "in excess of an amount that would be considered 'personal use.'" The CRI described Christie's age, height, weight, and hair, said that she had a history of narcotics possession and use, and reported that she had numerous prior narcotics-related arrests and convictions. Although Officer Shoemaker stated in his affidavit that the CRI had a relationship with Christie that would place him or her in a position to have detailed knowledge concerning Christie's drug dealings, the CRI could not provide Christie's last name or address. Further, the CRI did not explain specifically how he or she knew that Christie was in possession of methamphetamine. Finally, the CRI did not specifically state that the methamphetamine was at Christie's residence.

Officer Shoemaker checked the Ramsey County, Minnesota, records for arrests of white females named Christie. He obtained color booking photos from which the

CRI identified Christie as Christine Jean Fleischauer. He researched Fleischauer's criminal record, confirmed the CRI's report of prior convictions, found her address via the internet, and confirmed her address with the Ramsey County Probation Office, where she was on probation for narcotics violations.

On the night of January 31, officer Shoemaker, accompanied by other officers, executed the warrant at Fleischauer's residence. Fleischauer was home at the time with another male, not Carpenter. During execution of the warrant, Carpenter arrived at the residence and let himself in using his own key. Upon Carpenter's entry, officers immediately secured him and seized a plastic shopping bag that he carried. Officers felt hard objects in the bag, searched the bag, discovered two cell-phone boxes, opened the boxes, and discovered 443.9 grams of methamphetamine along with $3,000 and a digital camera. Having found these materials, the officers placed Carpenter under arrest, conducted a search incident to arrest, and seized numerous small bags of methamphetamine from his pants pockets.

After the filing of federal charges, Carpenter moved to suppress the evidence seized from his bag and pockets. A hearing was held before a magistrate judge who found that Carpenter had a privacy interest in the Fleischauer residence and, therefore, standing to challenge the warrant. The magistrate judge further found the warrant to be supported by probable cause. In the alternative, he held the seized evidence admissible under United States v. Leon, 468 U.S. 897 (1984), because officer Shoemaker relied in good faith upon the warrant and because his reliance was objectively reasonable. Finally, the magistrate judge held that the seizure and search of Carpenter's bag and its contents were justified under Terry v. Ohio, 392 U.S. 1 (1968), as a necessary precaution to ensure officer safety.

Carpenter filed objections to the magistrate judge's report and recommendation. In particular, he argued that the warrant application and the CRI's statement did not provide information to suggest Fleischauer's residence as the location where drugs

3

would be found, that the CRI was unreliable and inconsistent in that he or she claimed to have a relationship with Fleischauer yet did not know Fleischauer's name, that the drug quantity was not described with adequate specificity, and that the CRI did not explain a factual basis for the belief that Fleischauer possessed drugs. The district court rejected Carpenter's attack on the warrant and affirmed the magistrate judge's findings of probable cause and objectively reasonable reliance.

Carpenter subsequently entered a conditional guilty plea and reserved the right to appeal the denial of his suppression motion. On appeal, Carpenter argues that the warrant was not supported by probable cause and that the "good faith" exception of Leon should not apply because the warrant and warrant application were so severely infirm that the officer's reliance was not objectively reasonable. Carpenter does not argue the Terry issue on appeal. We affirm.

II.

Under United States v. Leon, supra, the question of whether an officer's reliance on an issued warrant was objectively reasonable is a question of law. Accordingly, "[w]e review the district court's conclusion regarding the objective reasonableness of the officer['s] reliance on the . . . validity of the warrant de novo." Id.

We assume that the multiple alleged infirmities with the warrant application, viewed collectively, are sufficient to demonstrate an absence of probable cause. Illinois v. Gates, 462 U.S. 213, 230-31 (1983) (stating that the test of whether a warrant is supported by probable cause requires analysis of the totality of the circumstances); United States v. Morales, 923 F.2d 621, 623-24 (8th Cir. 1991) (stating that in the assessment of probable cause, "we do not evaluate each piece of information independently; rather, we consider all of the facts for their cumulative meaning."). We may proceed with our analysis based on this assumption because, as

4

instructed by the Court in Leon, ". . . courts [may] reject suppression motions posing no important Fourth Amendment questions by turning immediately to a consideration of the officers' good faith." Leon, 468 U.S. at 925.

The Court in Leon determined that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates," and that "there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion." Id. at 916. Accordingly, the Court drew a clear distinction between the motivations of detached, neutral magistrates and those of partisan enforcement officers who are "'engaged in the often competitive enterprise of ferreting out crime.'" Id. at 914 (quoting United States v. Chadwick, 433 U.S. 1, 9 (1977)). Having drawn this distinction, the Court held that the exclusionary rule could be modified to permit the admission of evidence seized by officers who act in objectively reasonable, good faith reliance upon issued warrants. Id. at 922. This holding demonstrated the Court's view that a neutral magistrate's intervention in the "competitive enterprise of ferreting out crime" provides adequate protection of Fourth Amendment rights in many cases. The Court noted that exceptions would be few when it stated that:

> "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness," Illinois v. Gates, 462 U.S., at 267, . . . (WHITE, J., concurring in judgment), for "a warrant issued by a magistrate normally suffices to establish" that a law enforcement officer has "acted in good faith in conducting the search." United States v. Ross, 456 U.S. 798, 823, n.32, . . . (1982).

Leon, 468 U.S. at 922 (extended internal citations omitted).

In addition, the Court provided detailed guidance to define those limited situations in which reliance on a warrant could not justify suspension of the "extreme

sanction of exclusion." Id. at 916. Two of the Court's enumerated situations illustrate the nature of the shortcomings that must exist to merit a departure from Leon's general rule of admissibility. First, "[s]uppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit the affiant knew was false or would have known was false except for his reckless disregard of the truth." Id. at 923. Here, there is no allegation that Officer Shoemaker lied. Further, the facts do not demonstrate recklessness on his part. Officer Shoemaker described the steps he took to verify the CRI's information, his own past experience with the CRI, the Strike Force's past experience with the CRI, and the past reliability of the CRI's information. United States v. Wright, 145 F.3d 972, 974-75 (8th Cir. 1998) ("The statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant. . . . The reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information."); United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001) (corroboration of minor, innocent details may support finding of probable cause).

Second, suppression remains an appropriate remedy where "the issuing magistrate wholly abandoned his judicial role." Leon, 468 U.S. 923. In such a case, the issuing magistrate does not serve as a neutral and detached actor, but rather as a "'rubber stamp for the police'" and "'an adjunct law enforcement officer.'" Id. at 914 (quoting Aguilar v. Texas, 378 U.S. 108, 111 (1964) and Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 326-37 (1979) (other internal citations omitted)). Here, the issuing magistrate did not "wholly abandon[] his judicial role." Leon, 468 U.S. at 923.

The third situation described by the Court merits further examination. Where a warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable,*'" an officer cannot "manifest objective good faith in relying on [the] warrant." Leon, 468 U.S. at 923 (quoting

6

Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)) (emphasis added).  Carpenter alleges that the present affidavit was so lacking.  We disagree.

"Entirely unreasonable" is not a phrase often used by the Supreme Court, and we find nothing in Leon or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words.  In this case, three detached and neutral judicial officers (the issuing magistrate, the federal magistrate judge, and the district judge) found there to be, at a minimum, a substantial basis for finding probable cause based on the affidavit.  Gates, 462 U.S. at 236; United States v. Mahler, 141 F.3d 811, 813 (8th Cir. 1998) (setting forth deferential standard of review for probable cause determinations which requires a reviewing court to uphold finding where the better-situated, issuing judge possessed a substantial basis for finding probable cause).

Here, none of the alleged infirmities that Carpenter relies upon presents such a glaring error or clear deficiency under our cases as would render a belief in the existence of probable cause entirely unreasonable.  Viewing the cumulative effect of these infirmities, as we must, we see a series of unrelated shortcomings that may demonstrate an absence of probable cause.  We also see, however, that the cumulative effect of the information set forth in the affidavit provides an adequate basis for finding that Officer Shoemaker's reliance was reasonable.

The first alleged infirmity with the affidavit involved Officer Shoemaker's characterization of the drug quantity.  Although he failed to articulate an estimated quantity in measurable units, it was not objectively unreasonable for him to believe that the description, "an amount greater than personal use," was adequately specific.  There was not a complete omission of reference to quantity.  Rather, Officer Shoemaker chose to describe quantity in functional, rather than numerical, terms. We have not clearly defined a degree of specificity or manner of description that is

7

required to properly set forth a drug quantity for the purpose of establishing probable cause, nor do we believe it wise to do so. To place rigid constraints on the manner in which quantity must be described would unnecessarily focus on an isolated factor and inappropriately depart from the applicable totality of the circumstances standard. Accordingly, while greater detail concerning drug quantity would have been preferable as a means to lend further indicia of reliability to the CRI's information, it was not objectively unreasonable for Officer Shoemaker to believe that the quantity reference was sufficient.

The second alleged infirmity involved Officer Shoemaker's failure to set forth a more detailed factual basis for the CRI's statement that Fleischauer possessed drugs. All that the affidavit stated in this regard was that the CRI had a relationship with Christie "where [] the CRI could know such detailed information regarding 'Christie's narcotic's [sic] dealings.'" Carpenter argues that the CRI's statement is an unsupported conclusion expressed through the affiant and that the Supreme Court rejected this type of unsupported statement in Aguilar, 378 U.S. at 114-15. While we agree with Carpenter's assertion that the present case is somewhat analogous to Aguilar, we do not find the similarities so complete as to make Officer Shoemaker's belief in the existence of probable cause entirely unreasonable. In Aguilar, unlike the present case, there was no information to explain why the officer believed the informant to be reliable, no information to demonstrate that the informant had knowledge of innocent facts related to the suspect, no description – numerical or functional – of drug quantity, and no statement as to the existence of a relationship between the CRI and the suspect that would explain the CRI's knowledge.[2] Aguilar,

---

[2] The affidavit in Aguilar provided:

Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates, and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.

8

378 U.S. at 109; see also Tyler, 238 F.3d at 1039 (corroboration of minor, innocent details may support finding of probable cause); Wright, 145 F.3d at 974-75 ("The statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant. . . . The reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information."). Because, under Leon, we do not conduct a de novo review of the probable cause determination, we need not parse this distinction more finely. It is sufficient to note that Carpenter raises a close question concerning a legal deficiency. On such issues, officers may reasonably rely on the judgment of the issuing magistrate. We note, in addition, that Aguilar, as a rule of law standing on its own, has been superseded by the Gates "totality of the circumstances" approach.

The third potential infirmity with the affidavit relates to the issuing magistrate's inference that there was a "fair probability that contraband or evidence of a crime [would] be found" at the Fleischauer residence even though the affidavit did not present facts to indicate the existence of a nexus between Fleischauer's residence and the suspected contraband. Gates, 462 U.S. at 238 (defining "fair probability" standard for determining probable cause). While we do not endorse such an inference without a factual basis to form the nexus between the residence and the drugs, United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000) ("We agree, of course, that there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue."), we cannot say that it was entirely unreasonable for Officer Shoemaker to believe that such an inference was permissible. As a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence. Given the common sense appeal of this inference, and its acceptance

---

Aguilar, 378 U.S. at 109.

by the issuing magistrate, it was not entirely unreasonable for Officer Shoemaker to believe the inference to be permissible.[3]

The final potential infirmity with the affidavit, as alleged by Carpenter, lends little or no strength to his attack on the reasonableness of Officer Shoemaker's reliance. Carpenter argues that the CRI's statements were unreliable at best and contradictory at worst because the CRI claimed to have had a relationship with Fleischauer but did not know her last name. We see no internal conflict in the CRI's statements. The term relationship is a flexible term. The fact that the CRI knew Fleischauer only as "Christie" provides insight as to the narrow extent and casual nature of the relationship, but it does not undermine the credibility of the CRI's claim as to the existence of a relationship, nor does it contradict Officer Shoemaker's other claims regarding the CRI's reliability. Of course, more detailed information as to the nature of the relationship would have better explained the source of the CRI's information. However, any shortcomings in this regard are not of the magnitude that would make Officer Shoemaker's reliance entirely unreasonable.

Viewing the collective effect of these alleged infirmities, Carpenter argues that our holding in Herron, 215 F.3d at 814, instructs that we must find Officer

---

[3]To illustrate the fineness of the legal distinction that Carpenter argues Officer Shoemaker should have recognized, we note that we previously approved a similar inference where few additional facts existed to provide the requisite nexus with the suspect's residence. United States v. Allen, 297 F.3d 790, 794 (8th Cir. 2002). In Allen, the only additional fact to connect criminal activity to the residence was the statement of a cooperating witness who informed officers that the suspect had certain equipment for the production of methamphetamine "in his possession *or at his residence.*" Id. at 793 (emphasis added). Given the fine distinction between Allen and the present case, we cannot say that it was entirely unreasonable for Officer Shoemaker to rely on the issuing magistrate's willingness to infer the requisite nexus.

Shoemaker's reliance entirely unreasonable. Herron, however, is distinct in that the affidavit at issue in that case was uniquely infirm in a manner dissimilar from the present affidavit. In Herron, the affidavit to support the warrant focused suspicion of illegal activity solely on a separate suspect who actually was the investigation's primary suspect. Id. at 813. The only connections between Herron and the primary suspect were, according to the affidavit, wholly innocent: (1) the primary suspect was Herron's relative, (2) the primary suspect had been staying at Herron's farm to help harvest corn on one prior occasion when officers delivered an earlier, poaching-related citation to the primary suspect, and (3) Herron was also a relative and associate of the primary suspect's father. Id. In Herron, after officers discovered marijuana growing at the primary suspect's farm, they learned that Herron had prior convictions for growing marijuana and applied for a warrant to search the Herron farm. Therefore, the affidavit stated only that Herron had prior convictions for cultivating marijuana and that he had, on one known occasion, associated with a relative who had recently been found growing marijuana. The affidavit contained no information tending to show that Herron "had ever been seen at the site of the marijuana cultivation, and he was not shown to have been associated with the [primary suspect] in past marijuana dealings." Id. at 814. Further, the officers who drafted the Herron affidavit used a copy of the affidavit previously used for the primary suspect and merely substituted a description of the Herron property. All conclusions about the likely location of marijuana and other evidence were unchanged from the original affidavit that was used for the primary suspect's property. In fact, the affidavit did not even contain a complete reference to the Herron property. Looking at the totality of the circumstances, we held that it was not objectively reasonable for the executing officers to rely on the Herron affidavit because, "[t]he problem [was] *not a technical legal deficiency*; the affidavits simply [did] not say very much about Mr. Herron or his residence." Id. at 814 (emphasis added).

11

By contrast, in the present case there were indicia of reliability to support the officer's belief in the reliability of the CRI. The CRI, who had proven reliable in the past, had specifically stated that Fleischauer possessed drugs. Officer Shoemaker verified numerous innocent facts provided by the CRI and relied on the judgment of the issuing magistrate who was better situated than Officer Shoemaker to address any problems. Looking at the totality of the circumstances, we do not find the cumulative effect of the numerous potential legal deficiencies sufficient to make Officer Shoemaker's belief in the existence of probable cause entirely unreasonable.

The remaining exception described by the Court in Leon, although raised by Carpenter, is not applicable in the present case. This exception relates to alleged infirmities with the warrant itself rather than the affidavit behind the warrant. Where a warrant is sufficiently facially deficient, for example, where it "fail[s] to particularize the place to be searched or the things to be seized . . . executing officers cannot reasonably presume it to be valid." Leon, 468 U.S. at 923. The warrant in this case specifically identified the residence as the location to be searched. Further, the warrant listed the drugs and related items as the items to be located. There was no ambiguity on the face of the warrant, much less fatal ambiguity that would have made execution of the warrant objectively unreasonable.

The decision of the district court is affirmed.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

12