# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2975
_____

United States of America,           *
                                     *
            Appellant,               *
                                     *
    v.                               *
                                     *
Dexter Ross,                         *
                                     *
            Appellee.                *


_____          Appeals from the United States
                     District Court for the
No. 06-2995          Eastern District of Arkansas.
_____

United States of America,           *
                                     *
            Appellee,                *
                                     *
    v.                               *
                                     *
Dexter Ross,                         *
                                     *
            Appellant.               *

_____

Submitted:  February 13, 2007
Filed: June 7, 2007

_____

Before O'CONNOR, Associate Justice (Ret.),[1] WOLLMAN, and SMITH, Circuit
    Judges.
                        _____

WOLLMAN, Circuit Judge.

A jury found Dexter Ross guilty of conspiring to possess with the intent to
distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846, possession with
the intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1), and being
a felon in possession in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After
determining that Ross's guidelines range was 110 to 137 months, the district court
sentenced Ross to 137 months' imprisonment and then suspended 77 months of that
sentence. The government appeals the sentence. Ross cross-appeals, arguing that the
evidence against him should have been suppressed. We affirm the conviction, but
vacate the sentence and remand for further proceedings.

## I. Factual Background

Martin Ruiz enlisted the assistance of a confidential source (CS) in delivering
100 pounds of marijuana to an individual known as "Dexter" in Arkansas. The CS
took his truck to Ruiz, who loaded it with the marijuana. The CS then drove the truck
to Arkansas. Ruiz and his girlfriend, Erica Gurrostieta, kept up with the CS in a
separate vehicle. Once they arrived in Arkansas, Gurrostieta went to meet with Dexter
Ross while Ruiz, the CS, and another individual began transferring the marijuana into
another truck. The men were arrested soon thereafter. Gurrostieta met with Ross and
they each took their respective vehicles to a residence occupied by Gurrostieta's sister
in Morrilton, Arkansas. Gurrostieta arrived first. As Ross was pulling into the
driveway in his blue-and-white pickup, Gurrostieta began frantically sounding her
horn. After some initial hesitation, Ross quickly pulled out of the driveway and sped

---

[1]The Honorable Sandra Day O'Connor, Associate Justice (Ret.), Supreme Court
of the United States, sitting by designation.

away.  Ross was apprehended shortly thereafter.  At the time of his arrest, Ross had approximately $900 in his possession.   Agents obtained a state search warrant to search his home for evidence related to a drug conspiracy.  The affidavit submitted in support of the warrant application recounted the details of the arrangement, stated that the CS had delivered drugs to Ross some six months earlier, noted that an officer had seen Ross's same blue-and-white truck at Ross's home earlier in the day, and stated that Ross had verified his home address.  The affidavit did not otherwise mention any drug-related activity at Ross's home.  The police searched Ross's home and found seven grams of crack cocaine, a small amount of marijuana, two sets of digital scales, drug ledgers, fax documents ordering "packages," and other paraphernalia.

## II. The Suppression Claim

Ross moved to suppress the recovered evidence, arguing that the affidavit in support of the warrant application failed to establish probable cause because it did not establish a nexus between Ross's alleged involvement in the marijuana distribution conspiracy and his home.  The magistrate judge concluded that the information within the four corners of the affidavit sufficed to establish probable cause and recommended denying the motion.  The district court likewise found that the affidavit established probable cause for the search.

Assuming, without deciding, that the affidavit failed to provide a sufficient nexus between Ross's residence and the drug conspiracy at issue, the Leon good-faith exception saves the evidence from suppression under the facts of this case.[2]  See United States v. Leon, 468 U.S. 897, 921 (1984).  Under the good-faith exception,

---

[2]Because we are deciding the matter on Leon grounds, we need not decide whether the content of the affidavit established a constitutionally sufficient nexus between Ross's criminal activity and his residence.  Cf. United States v. Carpenter, 341 F.3d 666, 671 (8th Cir. 2003) (noting that we do not conduct a *de novo* review of the probable cause determination as part of the Leon analysis).

"evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." United States v. Proell, 2007 WL 1174859, *3 (8th Cir. Apr. 23, 2007) (describing what constitutes good faith). The Leon exception is inapplicable, however, when an officer relies on a warrant for which the supporting affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." See Leon, 468 U.S. at 923 (citing Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)).[3] "'Entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in Leon or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." United States v. Carpenter, 341 F.3d 666, 670 (8th Cir. 2003). We conclude that the officers' reliance on the affidavit was objectively reasonable.

First, from the perspective of law enforcement officers, the law is not so clearly established that the officers could reasonably predict that the affidavit lacked sufficient indicia of probable cause. Although we have not adopted a per se rule to the effect that probable cause to arrest a drug trafficker establishes an inference that records, paraphernalia, and other evidence of drug trafficking exists at the trafficker's residence, we have found probable cause to exist in cases in which officers have stated that in their experience such an inference is appropriate and in which a supporting affidavit also described a defendant's continuous course of drug trafficking activity. See, e.g., United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994). Further, many of our sister circuits have used language that comes even closer to a per se inference. See, e.g., United States v. Nolan, 199 F.3d 1180, 1183 (10th Cir. 1999) (citing other circuit decisions recognizing an inference); United States v. Wiley, 475 F.3d 908, 912-13 (7th Cir. 2007); United States v. McClellan, 165 F.3d 535, 546 (7th Cir. 1999) (noting that a magistrate may reasonably infer that evidence is likely to be found

---

[3]None of the other exceptions to the Leon exception are applicable. See Leon, 468 U.S. at 913-17 (describing the exceptions to Leon).

where drug dealers live); <u>United States v. Feliz</u>, 182 F.3d 82, 88 (1st Cir. 1999) (stating that it could reasonably be supposed that a drug dealer stored evidence of dealing at his home, though no drug trafficking was observed to occur there); <u>United States v. Thomas</u>, 989 F.2d 1252, 1254-55 (D.C. Cir. 1993) (per curiam) (observations of drug trafficking occurring away from dealer's residence can support a finding of probable cause for a search of the dealer's home); <u>United States v. Angulo-Lopez</u>, 791 F.2d 1394, 1399 (9th Cir. 1986) (stating that a magistrate may reasonably infer that evidence is likely found where drug dealers live); <u>United States v. Hodge</u>, 246 F.3d 301, 306 (3rd Cir. 2001) (finding it reasonable to search an experienced and repeat dealer's home).[4]

Second, not only did the issuing judge find sufficient indicia of probable cause within the affidavit to justify issuing a search warrant of Ross's residence, but so too did a United States magistrate judge and a United States district judge. This fact supports the conclusion that the officers reasonably relied on the affidavit and warrant. See <u>Proell</u>, 2007 WL 1174859, at *5 (the fact that multiple judges had independently reviewed the warrant application and had each concluded that probable cause existed cut against the argument that officers were clearly unreasonable for relying on the application); <u>United States v. Puckett</u>, 466 F.3d 626, 630 (8th Cir. 2006) (same); <u>see also</u> <u>Carpenter</u>, 341 F.3d at 670 (same, and also noting the deferential standard of review for probable cause determinations).

---

[4]Ross notes that the defendant in <u>Hodge</u> dealt drugs in the city of his residence while Ross traveled more than thirty miles from his home to meet with Gurrostieta. This argument may have some bearing on the probable cause determination, but is largely inconsequential when considered from the perspective of law enforcement officers who are not expected to have a complete understanding of every nuance and vagary of the law. <u>See</u> <u>Leon</u>, 468 U.S. at 921; <u>United States v. Rowland</u>, 145 F.3d 1194, 1207-08 (10th Cir. 1998) (noting that officers are not expected to appreciate the constitutional intricacies of the law).

Finally, even if it was lacking sufficient detail to establish a nexus for probable cause purposes, the affidavit did connect the drug transaction to Ross's home by way of his blue-and-white truck. An officer could reasonably believe that the connection was sufficient to justify a search for drug trafficking evidence in the residence. The affidavit recounted the use of trucks for hauling the marijuana, Ross's use of his truck in meeting Gurrostieta, the presence of Ross's truck at his home that very morning, the CS's statement that the hundred pounds of hauled marijuana was intended for Ross, and Ross's history of drug distribution activities. See United States v. Peterson, 2000 WL 305137, at *2 (4th Cir. Mar. 24, 2000) (unpublished per curiam table decision) (noting that the presence at the defendant's residence of a vehicle which was believed to have been involved in a crime "created a substantive connection between the [defendant's] residence and the crimes being investigated").

Accordingly, the information in the affidavit, coupled with the uncertain state of the law and the consistent finding of probable cause by every judge who independently reviewed the affidavit, satisfies us that the affidavit bore sufficient indicia of probable cause to render the investigating officers' reliance on it objectively reasonable.

## III. The Suspended Sentence

During the sentencing hearing, the court stated that its initial intent was to "adopt the government's request . . . [and] sentence him" within the specified guidelines range. After hearing how Ross had "seemingly travel[ed] the straight and narrow path and sa[id] that [he had] seen the light," the court reconsidered its original position and decided to suspend 77 months of the 137-month sentence.[5] By all appearances, then, the court based what amounts to a 45% variance entirely on Ross's post-offense rehabilitation and religious activity.

---

[5]The court was informed that Ross had begun attending church regularly.

The district court erred in imposing a suspended sentence in the absence of the statutory authority to do so.  See, e.g., United States v. Mastropierro, 931 F.2d 905, 906 (D.C. Cir. 1991) (noting that the Sentencing Guidelines do not authorize suspended sentences); UNITED STATES SENTENCING GUIDELINES MANUAL (U.S.S.G.) ch. 7, pt. A, 2(a) (2006) (declaring the statutory authority to suspend sentences "abolished").  Although he acknowledges that the district court erred, Ross asks that we modify the sentence rather than remand for resentencing because the district court's intent is sufficiently clear.  See United States v. Noble, 179 Fed. Appx. 400 (8th Cir. 2006) (unpublished per curiam decision) (modifying a sentence where remand was unnecessary based on clear district court intent expressed in oral pronouncement at sentencing).

As the government points out, however, the fact that Ross experienced a religious awakening is not a relevant sentencing consideration.  U.S.S.G. § 5H1.10 (declaring religion an irrelevant consideration).  To the extent that "seeing the light" may have referred in any way to his church attendance and religious faith, then, it should not have been considered at all.  Cf. United States v. Ture, 450 F.3d 352, 357 (8th Cir. 2006) (noting that a sentence is unreasonable if it gives significant weight to an improper or irrelevant factor).  Further, we are not convinced that the district court would have imposed only a 60-month sentence had it been aware that it could not utilize the deterrence effect inherent in a suspended sentence.[6]  Because the district court might very well have concluded that a sentence of 60 months' imprisonment, standing alone, would have neither been reflective of the seriousness of the offense nor adequate to deter criminal conduct, see 18 U.S.C. § 3553(a)(2), it would be inappropriate for us to modify the sentence to one of 60 months' imprisonment.

---

[6]A conviction under 21 U.S.C. § 841(b)(1)(B) requires a mandatory minimum of five years' imprisonment.

Accordingly, we affirm the judgment of conviction, but vacate the sentence and remand for resentencing consistent with this opinion.[7]

_____

[7]We note with regret the fact that the sentencing judge is now deceased.