# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3261

_____

United States of America

*Plaintiff - Appellant*

v.

Juan Lopez-Zuniga

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: October 19, 2018
Filed: November 26, 2018

_____

Before WOLLMAN, ARNOLD, and BENTON, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After the government indicted him for conspiring to distribute methamphetamine, *see* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, Juan Lopez-Zuniga moved to suppress evidence obtained from tracking devices that the government placed on his car. He maintained that probable cause did not support any of the four warrants authorizing installation of the trackers. In fact, he argued,

probable cause was so lacking that the officers who executed the warrants could not have believed in good faith that probable cause supported them. *See United States v. Leon*, 468 U.S. 897 (1984). Adopting a magistrate judge's report and recommendation, the district court agreed with Lopez-Zuniga and granted his motion to suppress. The government files this interlocutory appeal, *see* 18 U.S.C. § 3731, arguing that the district court erred in suppressing the evidence. We affirm the district court's suppression of evidence obtained from the first two warrants but reverse the suppression of evidence obtained from the third and fourth warrants and remand.

In December, 2015, a special agent with the Minnesota Bureau of Criminal Apprehension applied for a warrant that would allow him to place a GPS tracker on Lopez-Zuniga's car so he could monitor the car's movements for sixty days. He provided an affidavit detailing a drug investigation into one Rogelio Magana Garcia-Jimenez. The affidavit noted several controlled drug transactions involving Garcia-Jimenez, including transactions at an apartment where he was believed to live. Near the end of the affidavit, the special agent explained that, sometime before a controlled drug transaction at the apartment complex where Garcia-Jimenez was believed to live, he saw someone in Lopez-Zuniga's car "drop off an individual who resembled Garcia-Jimenez." The special agent then explained that another agent later observed Lopez-Zuniga and Garcia-Jimenez get into the same car at the same apartment complex and drive to a restaurant and mall in Sioux Falls, South Dakota. The special agent said that he and other officers believed that Lopez-Zuniga and Garcia-Jimenez were conspiring to sell illegal drugs and that Lopez-Zuniga was transporting Garcia-Jimenez for that purpose in the car.

A Minnesota state court issued a warrant on the basis of this affidavit, and police attached a GPS tracker to the car and began monitoring its movements. After sixty days, the special agent returned to the court for a second warrant to monitor the car for another sixty days. The second affidavit included the same information as the first as well as the results of the first sixty days of tracking the car. It also noted that

law enforcement officers had obtained a pen register on Garcia-Jimenez's phone, which showed that he and Lopez-Zuniga had had 154 "contacts" in about a two-month period. The district court held that the information provided in the first and second warrants did not establish probable cause to track the car. The court further held that evidence of probable cause was so lacking that the officers could not have relied on the warrants in good faith.

"Placement of a GPS tracking device on a vehicle is a 'search' within the meaning of the Fourth Amendment, requiring probable cause and a warrant." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016). Probable cause exists when, considering all the circumstances, there is a fair probability that evidence of a crime will be found in a particular place. *Id.* "Probable cause is a fluid concept that focuses on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010), and so we review the affidavit for probable cause using a common sense approach, not a hypertechnical one. *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007).

Even if probable cause for issuing a warrant did not exist, courts will not suppress the evidence obtained from it where it was objectively reasonable for the officer executing the warrant to have relied in good faith on the issuing judge's determination that probable cause existed. *United States v. Johnson*, 848 F.3d 872, 878–79 (8th Cir. 2017). In making this determination, we ask "whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the warrant." *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015). This so-called "good-faith exception" does not apply when the application is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.*

On appeal, the government has abandoned its argument that probable cause supported the first warrant; it argues only that the good-faith exception saves evidence obtained from the issuance of the first warrant from suppression. We disagree. Lopez-Zuniga makes only a brief appearance in the affidavit in support of the first warrant application, and the only information about him is that he dropped off someone appearing to be Garcia-Jimenez at his apartment and then days later picked him up to go to a restaurant and mall. The first affidavit does not connect Lopez-Zuniga to any of Garcia-Jimenez's suspected illicit activities. As the magistrate judge in this case said, if this amounts to probable cause, "then *anyone* who drops a drug trafficker off at the trafficker's residence and travels with the trafficker for innocent activity, such as the trafficker's grandmother or mere acquaintance, would be subject to search." We agree, and we think the warrant was so lacking in indicia of probable cause that belief in its existence would have been entirely unreasonable.

In reaching this conclusion, we find instructive our court's decision in *United States v. Herron,* 215 F.3d 812 (8th Cir. 2000). In that case, affidavits used in support of a search-warrant application requesting permission to search the defendant's home described a marijuana-trafficking ring, but we observed that the defendant "play[ed] only a small part in the[ ] affidavits." The only information provided about the defendant was that he had two prior convictions for cultivating marijuana, that he was related to some of the traffickers, and that one of those relatives had said four months before the search warrant was sought that he had stayed with the defendant to help harvest corn. *Id.* at 813–14. We held this was insufficient to show probable cause and that no reasonable officer could think probable cause existed, so the good-faith exception did not apply. *Id.* at 814–15. As in *Herron*, very little, if anything, connects the defendant to the trafficking activities set forth in the affidavit in this case.

We reach the same conclusion as to the second warrant even though it contained additional information. We do not consider the additional information obtained from the GPS tracker because, as we just explained, that evidence should be

-4-

suppressed. And we do not think the information derived from the pen register is enough—all it showed was that Garcia-Jimenez and Lopez-Zuniga had had 154 "contacts" between December 21 and February 11. The affidavit did not explain what did or did not constitute a "contact." For example, we do not know whether one text-message conversation constituted a single contact or, say, twenty, depending on how many separate messages were sent. But more important, nothing in the affidavit indicates that the contacts involved something criminal, or even a statement by the affiant that the supposedly high number of contacts were likely the product of a criminal conspiracy. In short, the affidavits demonstrate merely that Lopez-Zuniga was acquainted with Garcia-Jimenez.

The third and fourth warrant applications, however, are a different matter. In the third warrant application, a special agent in Iowa who was investigating narcotics trafficking sought a warrant from an Iowa state court that would allow him to monitor the car's movements for an additional sixty days after the second warrant expired. His affidavit described the incident where Lopez-Zuniga and Garcia-Jimenez went to the restaurant and mall in Sioux Falls and recited that a Minnesota state court had already granted a warrant authorizing the installation of the tracker and the monitoring of the car's movements. In addition to some of the information obtained from the tracker, which we again do not consider, the affidavit contained updated pen register figures, which showed "that Lopez-Zuniga had made 245 contacts to and from Garcia-Jimenez between January 24, 2016 and April 18, 2016." But there was more. The affidavit revealed that a confidential informant had arranged to buy methamphetamine from Garcia-Jimenez, who then told the informant where to meet to effect the transaction. When the informant went to that location, Lopez-Zuniga met him and handed over the methamphetamine.

This controlled purchase where Lopez-Zuniga sold drugs on Garcia-Jimenez's behalf is significant, we believe, because it connects Lopez-Zuniga to illegal activity. The magistrate judge asserted, however, that even if he were connected to the illegal

-5-

activity being investigated, nothing connected his car to the illegal activity. As a result, the magistrate judge concluded, the affidavit failed to contain the required "nexus between the contraband and the place to be searched." *See Johnson*, 848 F.3d at 878. The district court apparently adopted this reasoning, and Lopez-Zuniga urges us to do so as well.

We think that, at a minimum, the good-faith exception saves the evidence obtained from the third warrant from suppression because the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See Jackson*, 784 F.3d at 1231. We have emphasized that the Supreme Court's use of the phrase "entirely unreasonable" in *Leon* was a "particularly strong choice of words" that we should not dilute. *See United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003). In *Carpenter*, our court applied the good-faith exception to the search of a residence "even though the affidavit did not present facts to indicate the existence of a nexus between [the] residence and the suspected contraband." *Id.* at 670–71. We explained that it was not entirely unreasonable for the officer to rely on the warrant because, "[a]s a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence." *Id.* at 671. Likewise here, we do not think it entirely unreasonable for an officer to think that Lopez-Zuniga might use his car to move about in furtherance of a drug conspiracy, especially when he has been in frequent contact with a known drug distributor who has ridden in the very car to be tracked. And we don't think it entirely unreasonable for an officer to conclude that a connection between the car and the contraband need not be as strong when the warrant merely authorizes tracking the car's movement (and thus its driver) rather than searching the car itself. The point of putting a tracker on a car is not to reveal what the car contains but to reveal the locations and movements of those within it. So, it seems to us, the search is more about Lopez-Zuniga's movements than the car itself.

Because the fourth warrant application contained the same relevant information as the third, we conclude that evidence obtained from that warrant should not have been suppressed either.

Reversed and remanded.

_____