# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2909
_____

United States of America

*Plaintiff - Appellee*

v.

Jarmell Raymond Mayweather

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 20, 2020
Filed: April 9, 2021
_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.
_____

SMITH, Chief Judge.

A jury convicted Jarmell Raymond Mayweather of one count of possession with intent to distribute cocaine base ("crack") and cocaine. On appeal, his counsel raises two issues: whether the district court[1] erred by denying Mayweather's motion

_____

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

to suppress evidence and whether it abused its discretion by denying his motion for a *Franks*[2] hearing. In his pro se motion,[3] Mayweather further argues why the district court abused its discretion by denying his motion for a *Franks* hearing. We address this as well.[4] We affirm.

## I. *Background*
### A. *Underlying Facts*

Hennepin County Deputy Sheriff C.T. McLouden began investigating Mayweather in 2016 after a confidential reliable informant (CRI) advised him that Mayweather was "selling large quantities of cocaine" and driving a black Cadillac Escalade. Memo. Supporting Mot. to Suppress Ex. 1, at 2, *United States v. Mayweather*, No. 0:17-cr-00229-WMW-KMM-1 (D. Minn. 2019), ECF No. 38-1. In response, law enforcement retrieved the registration records for Mayweather's vehicle and confirmed the vehicle was registered to Mayweather. They also observed Mayweather "come and go" from the registered address "freely and at all times of the day, nighttime, early morning, and afternoon." *Id.*

McLouden testified that in February 2016, law enforcement "attempted to do a controlled buy of cocaine from Mr. Mayweather, but [they] couldn't complete it because instead of taking [the CRI's money]," Mayweather exchanged cocaine to pay

---

[2]*Franks v. Delaware*, 438 U.S. 154 (1978).

[3]After the briefing concluded, Mayweather filed a motion to proceed pro se, which we granted.

[4]Mayweather's pro se motion also alleges that his Sixth Amendment right to effective assistance of counsel was violated because his appellate counsel did not raise additional *Franks* arguments in the appellate brief. The first time that he raises this claim is in his pro se motion. However, we typically defer ineffective-assistance-of-appellate-counsel claims for collateral review and do so here. *See United States v. Cooke*, 853 F.3d 464, 474–75 (8th Cir. 2017); *United States v. Logan*, 49 F.3d 352, 361 (8th Cir. 1995).

off the marijuana debt he owed to the CRI. Trial Tr., Vol. III, 559, *United States v. Mayweather*, No. 0:17-cr-00229-WMW-KMM-1 (D. Minn. 2019), ECF No. 125.

In March 2016, law enforcement again arranged for the CRI to purchase cocaine from Mayweather. The CRI succeeded this time. After observing the purchase, law enforcement watched Mayweather, who was on foot, meet up with another suspected narcotics dealer, who drove Mayweather to Mayweather's registered address.

Then, McLouden applied for warrants to search Mayweather's residence and vehicle. McLouden included the following relevant facts in his supporting affidavit for the search warrants: (1) a CRI informed him that Mayweather was "selling large quantities of cocaine" and driving a black Cadillac Escalade; (2) the CRI had previously provided information to McLouden "that ha[d] been accurate and reliable," and that information had "always been independently corroborated and found to be true and accurate by [McLouden] and other law enforcement officers"; (3) the CRI "made controlled buys . . . under the direction and control of [McLouden]"; (4) law enforcement conducted physical surveillance of Mayweather in a black Cadillac Escalade; (5) McLouden confirmed Mayweather owned the Escalade; (6) the Escalade's registered address was on 19th Street; (7) McLouden observed Mayweather "come and go" from the 19th Street address "freely and at all times of the day, nighttime, early morning, and afternoon"; (8) McLouden directed the CRI to call Mayweather, which "Mayweather answered"; (9) "[t]he CRI then ordered a pre determined amount of cocaine from Mayweather"; (10) law enforcement observed the controlled buy between Mayweather and the CRI in March 2016; and (11) Mayweather met with another suspected narcotics dealer after the controlled buy, who subsequently drove him to the 19th Street address. Memo. Supporting Mot. to Suppress Ex. 1, at 2–3.

In addition, McLouden included that, "[b]ased on [his] training and experience," he knew that: (1) "controlled substances are typically sold by weight and that those dealing in quantities of controlled substances use scales and packaging equipment for their illicit transactions"; (2) "drug transactions most frequently involve cash[,]" and "[n]otes are frequently seized which list[] prices of drugs with reference of price per unit of measurement"; and (3) "individuals involved in illegal narcotics trafficking often use cellular phones, computers, cameras, thumb drives[,] and other electronic devices to communicate and store information related to their illicit activities." *Id.* at 4.

The court issued the warrants; McLouden, along with other law enforcement, executed them. During the search of Mayweather's residence, law enforcement seized 97.98 grams of crack, 1,130.39 grams of cocaine, and other drug paraphernalia. Law enforcement then located Mayweather's vehicle at a repair shop and found 4.477 more grams of crack.

## B. *Procedural History*

Before trial, Mayweather moved to suppress the evidence obtained from his residence and vehicle,[5] arguing probable cause did not support either warrant and the *Leon*[6] good-faith exception did not apply under the circumstances.

The magistrate judge recommended that the district court deny Mayweather's motion, concluding probable cause existed but even if it did not, the good-faith exception applied.

Mayweather objected to the report and recommendation, arguing that suppression was required because the search warrant did not establish a nexus

---

[5]On appeal, Mayweather only objects to the evidence seized from his residence.

[6]*United States v. Leon*, 468 U.S. 897 (1984).

-4-

between his residence and his alleged drug-dealing activities. The district court found this argument "unavailing even if an insufficient nexus support[ed] the warrants" because "[t]he evidence supporting the search warrants [wa]s not 'so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*.'" Order Adopting R. & R. at 3–4, *United States v. Mayweather*, No. 0:17-cr-00229-WMW-KMM-1 (D. Minn. 2019), ECF No. 52 (quoting *Leon*, 468 U.S. at 923). Thus, the district court overruled Mayweather's objections and adopted the report and recommendation, denying his motion to suppress.

Mayweather stood for trial. The jury convicted Mayweather of possession with intent to distribute crack and cocaine. Post trial, the government produced the buy money form and photocopies of the buy funds from the controlled buys. The buy money form was a single-page document identifying the use of $1,200 to purchase 26 grams of cocaine from Mayweather on March 8, 2016, at 3 p.m. at a predetermined location. The government attached two pages of photocopied money to the form. At the top of the first page of photocopied money, there was a handwritten note reading: "1 oz coke buy 3-8-2016." Aff. in Supp. of Mot. for Franks Hr'g Ex. 5-2, at 2, No. 0:17-cr-00229-WMW-KMM-1 (D. Minn. 2019), ECF No. 156-6. On the bottom of that page, there was a second handwritten note reading, "NO GO $ Returned but got dope." *Id.*

Next, Mayweather moved for a *Franks* hearing, arguing that McLouden knowingly included two false statements in the affidavit used to apply for the search warrant.[7] He alleged that: (1) the affidavit incorrectly stated that law enforcement arranged and observed a controlled buy in March 2016 and (2) the affidavit falsely or misleadingly described the CRI's reliability. The court denied Mayweather's motion and sentenced him to 132 months' imprisonment.

---

[7]Mayweather made nine allegations in total. However, only two of the allegations are relevant on appeal.

## II. *Discussion*

Mayweather argues that the district court (A) erred by denying his motion to suppress evidence and (B) abused its discretion by denying his motion for a *Franks* hearing. We affirm.

### A. *Motion to Suppress*

First, Mayweather argues that the district court erred in denying his motion to suppress evidence seized during the search of his residence. Mayweather alleges that the search warrant's supporting affidavit (1) lacked probable cause because it did not establish a "nexus" between his home and any criminal activity and (2) was so lacking in probable cause that the good-faith exception does not apply. We affirm the district court because even if the affidavit lacked probable cause, the good-faith exception applies.

When reviewing a denial of a motion to suppress, "this court reviews legal conclusions de novo and factual findings for clear error." *United States v. Morris*, 915 F.3d 552, 555 (8th Cir. 2019) (quotation omitted). We may affirm "on any grounds supported by the record," *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009), and will do so "unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made," *United States v. Skarda*, 845 F.3d 370, 376 (8th Cir. 2016) (quoting *United States v. Puckett*, 466 F.3d 626, 629 (8th Cir. 2006)).

The Fourth Amendment requires that warrants to search be supported by probable cause. The issuing judge "must make a 'common-sense decision' based on the totality of the circumstances set forth in the affidavit as to whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). And we afford

"great deference" to that determination. *Id.* (quoting *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009)).

But exclusion is not automatically required even when there is not a fair probability that contraband will be found in the place sought to be searched. "Under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *United States v. Moya*, 690 F.3d 944, 948 (8th Cir. 2012) (quotation omitted). This court reviews "the application of the *Leon* exception de novo." *Keele*, 589 F.3d at 943 (quoting *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008)).

"Evidence should be suppressed 'only if it can be said that the law enforcement officer[s] had knowledge, or may be properly charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *United States v. Koch*, 625 F.3d 470, 477 (8th Cir. 2010) (alteration in original) (quoting *Illinois v. Krull*, 480 U.S. 340, 348–49 (1987)). The "operative test" is "whether 'a reasonably well trained officer would have known that the search was illegal [despite the issuing judge's authorization].'" *Id.* (quoting *Perry*, 531 F.3d at 665). Thus, when the affidavit in support of a warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," the "extreme sanction of exclusion" of evidence may be granted. *United States v. Carpenter*, 341 F.3d 666, 669, 670 (8th Cir. 2003) (emphasis omitted) (quotations omitted).

Mayweather argues that the affidavit lacked sufficient indicia of probable cause because it provided no connection between Mayweather's drug distribution activities and his home. Thus, he asserts that McLouden's belief that the search was legal, was "entirely unreasonable." *See id.* (emphasis omitted) (quotation omitted).

Contrary to Mayweather's assertions, we have applied the good-faith exception in controlled-substance cases even when an affidavit did not establish a nexus between the search location and the suspected contraband. In those cases, we concluded that the facts enabled an officer and the issuing judge to logically infer that a drug dealer would store contraband at his residence. *See id.* at 671–72 (stating it was not "entirely unreasonable" for an officer to rely on the warrant because, "[a]s a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence"); *see also Moya*, 690 F.3d at 948–49 (holding that the good-faith exception applied because it was not unreasonable for the issuing judge to infer evidence would be at a suspect's house when the affidavit indicated the suspect was distributing methamphetamine in the area, making the officer's reliance objectively reasonable).

Here, the good-faith exception similarly applies because the issuing judge could have logically inferred that Mayweather stored contraband at his residence. As in *Moya*, law enforcement possessed information that Mayweather was distributing cocaine. The issuing judge could reasonably infer that evidence of cocaine distribution would be at Mayweather's residence. Therefore, McLouden's "[r]eliance on the search warrant was objectively reasonable, and there is no evidence [he] acted in bad faith." *See Moya*, 690 F.3d at 949; *see also United States v. Ross*, 487 F.3d 1120, 1123–24 (8th Cir. 2007) (emphasizing that the issuing state judge, federal magistrate judge, and federal district court judge all found sufficient indicia of probable cause); *cf. United States v. Herron*, 215 F.3d 812, 814–15 (8th Cir. 2000) (finding that the good-faith exception could not apply, even when a state judge issued the warrant, because the only evidence connecting the suspect or his house to a farm containing marijuana plants was the suspect's prior marijuana convictions and his familial relationship to the farm owners).

In *Ross*, the good-faith exception applied because (1) we previously held that probable cause to arrest a drug dealer supported an inference that evidence exists at his residence when officers stated that in their experience such an inference is appropriate; (2) the issuing judge, reviewing magistrate judge, and reviewing district court judge all found sufficient indicia of probable cause within the affidavit; and (3) the affidavit actually connected the drug transaction to the suspect's home by way of his truck. *Ross*, 487 F.3d at 1123–24; *see also United States v. Luloff*, 15 F.3d 763, 768 (8th Cir. 1994) (reversing a district court's grant of a motion to suppress when an affidavit supporting a search warrant showed that the defendant "had engaged in a continuous course of drug trafficking" and the affiant "aver[red] based upon his experience that drug traffickers often keep in their residences records of their illicit activity").

Unlike in *Herron*, where officers established no connection between illegal activity and the suspect or his house, here, officers provided evidence connecting the suspect, Mayweather, to illegal drug activity. Like in *Carpenter* and *Moya*, there was sufficient information in the affidavit that Mayweather was distributing drugs. As in *Ross*, the issuing state judge, federal magistrate judge, and federal district court judge all found sufficient indicia of probable cause.

Further, the evidence is stronger here than in *Carpenter* and *Moya* because the affidavit connected drug activity to Mayweather's home by stating that Mayweather returned to his residence after a controlled buy. *Cf. United States v. El-Alamin*, 574 F.3d 915, 924 (8th Cir. 2009) (finding probable cause when, among other facts, law enforcement observed a suspected cocaine distributor return home directly after engaging in a controlled buy with a CRI, who had also previously purchased cocaine from within the suspect's residence). Mayweather tries to distinguish his case, explaining that law enforcement did not observe him return *directly* to his residence after selling drugs because he stopped to meet with another suspected narcotics trafficker first. However, Mayweather was on foot and the suspected narcotics dealer

he met subsequently drove him to his residence. Thus, the distinction that Mayweather makes is not meaningful because he returned to his residence shortly after selling cocaine.

Additionally, McLouden's affidavit noted that law enforcement observed Mayweather's car come and go from the residence at all hours of the day, creating another indicia that such odd hours are connected to drug trafficking. Mayweather even registered his vehicle using that address. Although McLouden did not include an explicit statement that "based on his training and experience" drug traffickers often keep records of their illicit activities in their residences as in *Luloff*, he did aver that based on his experience, drug dealers "use scales and packaging equipment for their illicit transactions" and "cellular phones, computers, cameras, thumb drives[,] and other electronic devices to communicate" and that "[n]otes are frequently seized which list[] prices of drugs." Memo. Supporting Mot. to Suppress, Ex. 1 at 4. These statements further allow for an inference that such items could be found at Mayweather's residence. Therefore, it was reasonable for McLouden to rely on the issuing magistrate's probable-cause determination.[8]

---

[8]Neither party notes that the affiant was the same officer as the one who executed the search warrant. Regardless, we do not vary our analysis when the officer who applies for a search warrant also executes the warrant. *See Carpenter*, 341 F.3d 666 (holding the affidavit was not so lacking in indicia of probable cause as to render an official's belief in its existence entirely unreasonable when the affiant applying for the search warrant was the same officer who executed the warrant); *see also United States v. Falso*, 544 F.3d 110, 113–14 (2d Cir. 2008) (same).

This is at least true when the affiant has not included a recklessly misleading or false statement in his affidavit. *Cf. Falso*, 544 F.3d at 136 (Jacobs, J., dissenting) (stating that, although the issuing "judge's imprimatur [generally] assures the executing officer that there is probable cause," "where, as here, the executing officer is the same officer who misled the judge, the good-faith exception to the exclusionary rule cannot apply" when the affiant made recklessly misleading or false statements).

Thus, we apply the good-faith exception and affirm the district court.

B. *Post-verdict Motion for a* Franks *Hearing*

Mayweather argues that the district court erred by denying his post-verdict motion for a *Franks* hearing. We affirm the district court.

Mayweather argues that the district court erred in denying his post-verdict motion for a *Franks* hearing because he made a substantial preliminary showing through trial testimony and the controlled buy forms that McLouden knowingly and intentionally included false statements and a material omission in his application for a search warrant.

The alleged false statements are: McLouden's statement that the CRI traded cash for cocaine during the March 2016 controlled buy and McLouden's description of the CRI's reliability. The alleged material omission is the exclusion of law enforcement's use of a GPS-tracking device on Mayweather's vehicle.

"We review the denial of a *Franks* hearing for abuse of discretion." *El-Alamin*, 574 F.3d at 924 (quoting *United States v. Kattaria*, 553 F.3d 1171, 1177 (8th Cir. 2009) (en banc) (per curiam)). A defendant may only receive "a *Franks* hearing . . . after making a substantial preliminary showing" that the warrant's issuing judge relied on statements in an affidavit that were false or were "omissions made knowingly and intentionally or with reckless disregard for the truth." *Id.* at 924–25. "This substantiality requirement is not met lightly and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements." *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015). "A mere allegation standing alone" is not enough. *El-Alamin*, 574 F.3d at 925. "Allegations of negligence or innocent mistake are insufficient." *United States v. Williams*, 477 F.3d 554, 559 (8th Cir. 2007) (quoting *Franks*, 438 U.S. at 171).

Additionally, the defendant "must . . . show that the alleged false statement or omission was necessary to the finding of probable cause." *United States v. Engler*, 521 F.3d 965, 969 (8th Cir. 2008) (quotation omitted). If the defendant shows it was necessary, a *Franks* hearing is required. *Franks*, 438 U.S. at 156. Here, however, we do not need to decide whether the statements were necessary to the probable-cause finding because Mayweather has not made a substantial preliminary showing that McLouden's statements were false. In addition, he waived his GPS-related argument.

### 1. *The Payment Form*

Mayweather did not make a substantial preliminary showing that McLouden falsely stated in his affidavit that the CRI traded cash for cocaine during the March 2016 controlled buy. Therefore, we affirm the district court's denial of Mayweather's motion for a *Franks* hearing based on this argument.

The affidavit explained that law enforcement completed a controlled buy between Mayweather and the CRI in March 2016. McLouden's trial testimony explained that they attempted a controlled buy in February 2016, but no money was exchanged. Mayweather contends that the buy money form that the government produced established that a successful controlled buy did not occur in March 2016.

Mayweather fails to show that either event did not happen. He merely refutes their order of occurrence. From his perspective, annotations on the buy form indicate that the successful controlled buy occurred in February, whereas the controlled buy in which no money was exchanged occurred in March. Thus, the affidavit falsely stated that a controlled buy occurred in March and within 72 hours of McLouden applying for the warrant.

The buy money form was a single-page document identifying the use of $1,200 to purchase 26 grams of cocaine from Mayweather on March 8, 2016, at 3 p.m. Two pages of photocopied money were attached to the form. At the top of the first page

of photocopied money, there was a handwritten note reading: "1 oz coke buy 3-8-2016." Aff. in Supp. of Mot. for Franks Hr'g Ex. 5-2, at 2. On the bottom of that page, there was a second handwritten note reading: "NO GO $ Returned but got dope." *Id.*

Mayweather argues that the annotation on the buy form, saying "NO GO $ returned but got dope" at the bottom of the page "indicates unequivocally that no money was exchanged for drugs with respect to the alleged transaction of March 8, 2016," because the top notation includes the March 2016 date. Appellant's Br. 29.

However, the buy money form clearly dictated the details of the March 2016 controlled buy. Those details were confirmed on the photocopied money stating "1 oz. coke buy 3-8-2016." Aff. in Supp. of Mot. for Franks Hr'g Ex. 5-2, at 2. The district court did not abuse its discretion when it concluded the "NO GO" annotation was a reference to the February 2016 buy. McLouden's trial testimony supports this conclusion. In fact, the buy form and photocopied money support the affiant's statements and trial testimony. Mayweather has failed to make more than a "mere allegation." *See El-Alamin*, 574 F.3d at 925.

Thus, we affirm the district court because it did not abuse its discretion when it concluded Mayweather did not make a substantial preliminary showing that the buy form information was false.

### 2. *The CRI's Reliability*

Mayweather also did not make a substantial preliminary showing that McLouden misrepresented the CRI's reliability in his affidavit. Therefore, we affirm the district court's denial of Mayweather's motion for a *Franks* hearing based on this argument as well.

"The statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant. The reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information." *United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998) (citations omitted) (holding that the evidence obtained pursuant to a search warrant should not be suppressed because the affidavit adequately established the CRI's reliability when the affiant stated that the CRI had proven his "reliability in the past by making controlled purchase[s] of crack cocaine under the direct supervision of affiant officers" (alteration in original)).

Mayweather contends McLouden's trial testimony contradicted his description of the CRI in the search warrant affidavit. At trial, McLouden testified that he was the CRI's "exclusive handler." Trial Tr., Vol. III, 569. Because the affidavit stated that information by the CRI was "always independently corroborated" by the "affiant *and other law enforcement officers*," Mayweather argues that this statement must be false in light of McLouden's trial testimony. Memo. Supporting Mot. to Suppress Ex. 1, at 2 (emphasis added).

However, McLouden's work as a CRI's exclusive handler does not bar other law enforcement officers from corroborating the accuracy and reliability of the information provided by the CRI. Mayweather attempts to support this claim based on the CRI being "essentially brand[ ]new," thus preventing other law enforcement officers from having been able to find him reliable. Appellant's Br. at 30. But again, this is a "mere allegation," unsubstantiated by any proof. *See El-Alamin*, 574 F.3d at 925. Thus, Mayweather did not make a substantial preliminary showing that McLouden falsely described the CRI's reliability in his affidavit.

### 3. *Tracking Device*

Lastly, Mayweather argues that McLouden omitted the GPS tracking-device activities from the warrant "because it displayed a different occurrence of events than

what he testified to in his search warrant application in trial." Appellant's Mot. to Proceed Pro Se at 15. We affirm the district court's denial of Mayweather's motion on this basis as well.

Mayweather raised this alleged omission to the district court as a basis for a *Franks* hearing. However, the district court concluded that this argument was "untimely and, therefore, waived." Order Denying Mayweather's Mot. for a *Franks* Hr'g at 4, *United States v. Mayweather*, No. 0:17-cr-00229-WMW-KMM-1 (D. Minn. 2019), ECF No. 181. It explained that "more than 4 months before trial, Mayweather learned that law enforcement officers had obtained an order authorizing them to install a tracking device on [his] vehicle." *Id.* at 3–4. To the extent that Mayweather relies on McLouden's trial testimony, we agree with the district court that "the details that Mayweather learned during and after trial do not satisfy Mayweather's burden to make a 'substantial preliminary showing' that he is entitled to a *Franks* hearing" because the warrant affidavit omitted material that "would have been clearly critical to the finding of probable cause." *United States v. Carnahan*, 684 F.3d 732, 735 (8th Cir. 2012).

His motion makes no attempt to establish "good cause" for his delay in bringing the action. *See* Fed. R. Crim. P. 12(c)(3). Thus, the district court did not abuse its discretion when it concluded Mayweather waived this argument.

In addition to foregoing claims that we have addressed, Mayweather argues that the affidavit (1) lies about when the investigation into Mayweather began, (2) omits information about Mayweather's "marijuana relationship" with the confidential informant, (3) lies about whether McLouden knew Mayweather answered the informant's call, and (4) lies about whether McLouden was present for the controlled drug buy. We deny these additional claims because they are immaterial to the probable-cause finding.

-15-

### III. *Conclusion*

Accordingly, we affirm.

_____